302 P.2d 263

The STATE of Arizona ex rel. Wes POLLEY,
County Attorney of Cochise County,
Petitioner,

v.

The SUPERIOR COURT OF SANTA CRUZ
COUNTY, Honorable Gordon Farley, pre-
siding Judge thereof, Respondent.

No. 6295.

Supreme Court of Arizona.

Oct. 16, 1956.

Wes Polley, County Atty. of Cochise County, Bisbee, for petitioner.

*Gordon Farley*, in pro. per., and William Gordon and Hymen D. Goldberg, Tucson, for respondent.

UDALL, Justice.

The State of Arizona, at the relation of Wes Polley, County Attorney of Cochise County (hereinafter termed petitioner), sought an original writ of prohibition in this court directed to the Superior Court of Santa Cruz County and the Honorable Gordon Farley, presiding Judge thereof (hereinafter designated respondent), to restrain the court from enforcing an order requiring the petitioner to produce a stenographic transcript ("questions and answers") theretofore taken from defendant George Epstein and to allow the inspection and copying of said statement by counsel for defendant not later than a date therein fixed which was prior to the approaching trial date.

After notice had been given to respondent, and an informal hearing held in accordance with Rule 1(c), Rules of Supreme Court (1956), we issued an alternative writ of prohibition in order to resolve the jurisdictional question presented. A return to the writ having been filed and briefs submitted, with oral arguments waived, the matter is now ready for decision.

■ In the instant case there can be no doubt as to the appropriateness of invoking prohibition to test the jurisdiction of the court to enter the order here drawn in question. State ex rel. Mahoney v. Superior Court, 78 Ariz. 74, 275 P.2d 887 (which is hereinafter referred to as the Demand case).

The record discloses the following situation: On October 9, 1955, one George Epstein allegedly shot and killed Andrew Shepard and Joseph Skinner. Epstein also suffered a bullet wound in this shooting affray. Thereafter Epstein (hereinafter termed the defendant) was charged with murder and after a preliminary hearing, was held to answer to the superior court of Cochise County. Informations were separately filed charging defendant with murder and he was placed on trial at Bisbee. The jury being unable to agree upon a verdict, a mistrial was declared. Later a change of venue to Santa Cruz County was granted and respondent court is awaiting a ruling upon this prohibition matter before again placing defendant on trial.

On the day of the shooting defendant was placed under arrest and moved to the hospital for an emergency operation. Some two hours after such operation, defendant was questioned at the hospital by petitioner concerning the circumstances surrounding the shooting. Present was a court reporter who stenographically recorded all questions asked and answers made. Carefully selected portions of a transcribed statement thereof were used by petitioner at the first trial to impeach defendant's testimony on material factual issues. Defense counsel's efforts to inspect or obtain a copy of such statement in its entirety were unavailing. The county attorney and court reporter both refused such demand and the trial court did not see fit to require a compliance therewith. At the informal hearing before this court petitioner sought to justify such action upon authority of our decision in Kinsey v. State of Arizona, 49 Ariz. 201, 221, 65 P.2d 1141, 125 A.L.R. 3. He frankly avowed before us (and we assume before the respondent judge) that it was his intention on the second trial to again use the statement in some manner.

The sole contention here is "that the Court had no jurisdiction to make such order" requiring defense counsel be given an opportunity to inspect and copy the statement taken from defendant, that it "is in excess of the jurisdiction and authority of the said Court", and that if said order is permitted to stand it will "seriously jeopardize the chances of the State of Arizona in obtaining a conviction in this double murder case." We shall confine our discussion to the narrow jurisdictional question, relying upon the fact that here "abuse of discretion" is not an issue.

■ Counsel for defendant Epstein seek to uphold the order in question upon either

of these grounds: (1) that it is expressly authorized by the 1956 Rules of Criminal Procedure, or (2) under the inherent power of the court. The rule here relied upon is Rule 195, entitled "Right of defendant to discovery and inspection"—which is a counterpart of the Federal Rules Crim. Proc. Rule 16, 18 U.S.C.A. We deem it unnecessary to set forth this rule haec verba, as it is our opinion a careful reading of same will readily disclose its inapplicability to the situation at hand. The only reported cases on the point we have been able to find are recent Federal decisions interpreting Federal Rule 16. The great majority of such decisions hold that this rule does not sanction an order such as that in question here. See: Schaffer v. United States, 5 Cir., 221 F.2d 17; Shores v. United States, 8 Cir., 174 F.2d 838, 11 A.L.R.2d 635 (Syl. 4, 5), followed in United States v. Pete, D.C., 111 F.Supp. 292; United States v. Peltz, D.C., 18 F.R.D. 394—followed in: United States v. Gogel, D.C., 19 F.R.D. 107; United States v. Chandler, 7 F.R.D. 365, certiorari denied 336 U.S. 918, 69 S.Ct. 640, 93 L.Ed. 1081, rehearing denied 336 U.S. 947, 69 S.Ct. 809, 93 L.Ed. 1103. Contra: United States v. Peace, D.C., 16 F.R.D. 423. On the basis of the rationale of the majority decisions above cited, we hold that our Criminal Rule No. 195 does not sanction or authorize the order in question.

However, as to the second ground, we believe that *if the order in question were found to be essential to the due administration of justice,* respondent court did have jurisdiction to issue it under its inherent powers because a statute or rule of court is not the exclusive authority. Shores v. United States, supra, and Cf. the Demand case, supra.

It should be noted that while the inspection is not authorized under said Rule, the Rule itself does not express a policy prohibiting discovery; hence, the court is free under its inherent residual power to permit broader discovery. 67 Harv.L.R. 492, 498.

At the outset let it be clearly understood we are of the opinion a defendant does not have an unqualified right to inspect his written statement in the hands of the prosecutor—be it either a confession or an admission against interest—but that an application for same is addressed to the sound discretion of the trial court, and, speaking generally, it is only under exceptional circumstances that such an application should be granted. While there is some conflict in the reported decisions, the modern trend and great weight of authority support these principles. We quote from a few of the better reasoned federal and state decisions:

"In holding, as we have, that Rule 16 does not create in a defendant the

right to demand before trial a copy of his confession, the observation may be added that we are not intending thereby to imply that a federal court does not have the power in any situation to require the Government to furnish the defendant with a copy of his confession before trial. We think that such a power of control over a confession and its use does exist in a judicial proceeding, as part of the inherent nature and dignity of our system of administering criminal law, and that even without any rule or statute, therefore, the court is not powerless to require the Government to furnish the defendant with a copy of his confession, if the Government intends to use it as evidence on the trial and where the court deems it necessary in the interest of justice that the defendant should be furnished with a copy." Shores v. United States, 8 Cir., 174 F.2d 838, 845, 11 A.L.R.2d 635.

"The defendant is to be tried upon a charge in which his life may be forfeit. Such a trial should not be a test of skill or of wits. All reasonable opportunity should be afforded defendant to have his defense fully and effectively presented.

"No reason is urged that irreparable mischief would result from the proposed inspection; no disadvantage would result to the people; no disclosure would be made which would prejudice or handicap them in presenting their case.

"The proposed inspection may be of incalculable benefit to the defendant. A right sense of justice seems to decree that this is a proper occasion for the exercise by the court of its discretionary power." People v. Rogas, 158 Misc. 567, 287 N.Y.S. 1005, 1008.

" * * * There seems to be a measure of elemental justice in permitting one accused of crime to see a confession alleged to have been made by him, which he expects to be produced against him at his trial. Confessions are not always written exactly as they are made, nor is the most meticulous care always displayed by the police authorities in obtaining and transcribing them. The trial court can be made aware of the particular circumstances surrounding a confession in any particular case, and then determine whether it is in the interest of justice that the defendant should see a copy of it before trial." State v. Haas, 188 Md. 63, 51 A.2d 647, 653.

Chief Justice Vanderbilt, in the case of State v. Cicenia, 6 N.J. 296, 78 A.2d 568, 570, certiorari denied 350 U.S. 925, 76 S. Ct. 215, states:

"But to say that a defendant in a criminal case has no absolute right to an inspection of his own confession is not to deny the right of the trial judge to direct the prosecutor to grant the defendant an inspection of his own alleged confession, if in the sound discretion of the trial judge the interest of justice so requires. In this respect the confession of a defendant stands in a different category from all other papers, including the confessions of his codefendants. * * *"

The later case of State v. Tune, 13 N.J. 203, 98 A.2d 881, certiorari denied 349 U.S. 907, 75 S.Ct. 584, turns on "an abuse of discretion" which issue was before that court but is not before us in this case. It contains an exhaustive résumé of the authorities on our problem and reiterates, as we interpret it, the rule of the Cicenia decision. See also, State v. Clark, 21 Wash.2d 774, 153 P.2d 297, certiorari denied 325 U.S. 878, 65 S.Ct. 1554, 89 L.Ed. 1994; People v. Skoyec, 183 Misc. 764, 50 N.Y.S.2d 438; and Wigmore on Evidence, 3rd Ed., Vol. VI, page 395.

██ Finally petitioner urges that the statement in question is a part of the "work product" of the county attorney, and, hence, the trial court had no jurisdiction to order a pre-trial inspection. The difficulty with adopting in toto this premise is that we can find no universally accepted definition or meaning of precisely what is embodied within the term "work product". Petitioner strongly relies upon Cochrane v. State of Arizona, 48 Ariz. 124, 134, 59 P.2d 658, wherein a similar transcript was termed part of an attorney's "private papers". But see our subsequent ruling in Kinsey v. State of Arizona, supra. We point out that neither of these cases involved the question of jurisdiction of a court to issue a pretrial order of inspection.

The authorities all agree that the "impressions, observations, and opinions" which an attorney has recorded and transferred to his file as a product of his investigation of a case in preparation for trial are truly a "work product" and, therefore, are granted protection from discovery processes. See, United States v. Certain Parcels of Land, etc., D.C., 15 F.R.D. 224, 236. Probably the leading case on the subject of what is embraced within a "work product" is Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 393, 91 L.Ed. 451, certiorari denied 336 U.S. 906, 69 S.Ct. 485, 93 L.Ed. 1071, rehearing denied 336 U.S. 921, 69 S.Ct. 636, 93 L.Ed. 1083, which was a civil case where, admittedly, different rules apply. There, "work product" was characterized as that effort of an attorney reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed * * * 'Work product of the lawyer.'" The late Mr. Justice Jackson in

a specially concurring opinion therein stated: "It seems clear and long has been recognized that discovery should provide a party access to anything that is evidence in his case." As applied to criminal cases the following rule is laid down in 17 Am.Jur., Discovery and Inspection, section 25:

> "* * * In no case is there any suggestion that jurisdiction to compel production for inspection of papers or documents can properly be extended to notes or memoranda in possession of the prosecutor which are inadmissible as evidence either for the prosecution or for the defense or of any other papers and documents that are not admissible as evidence in the prosecution of the accused. * * *"

Cf. People v. Jordan, Gen.Sess., 128 N.Y.S. 2d 457, 461.

Without attempting to lay down a hard and fast rule to govern all cases, we believe that as applied to our problem this formulates the proper yardstick to apply. Certainly part of defendant's statement was used as evidence at the first trial and the fact that petitioner is vigorously resisting the court's order of inspection indicates that he intends, in some manner, to use it as surprise evidence in the forthcoming trial. It would seem, therefore, that this operates to remove same from the full protection accorded a "work product".

It is apparent respondent concluded that in the exercise of sound discretion and as a matter of fairness to defendant, it was essential to the administration of justice that defendant be given an opportunity in advance of trial to inspect and copy his purported statement which he could obtain in no other way. We are of the opinion the trial court under its inherent powers had jurisdiction to enter the order in question; hence, the alternative writ of prohibition heretofore issued is ordered quashed.

Alternative writ quashed.

WINDES and PHELPS, JJ., concur.

STRUCKMEYER, Justice (dissenting).

Chief Justice LA PRADE and I concur with the majority that the problem presented here is confined to a "narrow jurisdictional question", but we do not agree with their conclusion that the lower court had jurisdiction to enter an order for discovery.

This court held in Cochrane v. State, 48 Ariz. 124, 59 P.2d 658:[1]

> "* * * But if we concede defendant asked for a copy of the stenographic transcription of defendant's confession, and the court refused to

---

1. Cochrane v. State was overruled in part in Kinsey v. State, 49 Ariz. 201, 65 P.2d 1141, 125 A.L.R. 3, but not on the point relevant herein nor in the particular language quoted.

order the county attorney to furnish him with it, we do not think the ruling was error. * * * They are the private papers of the person or persons who take the pains and trouble of making them. * * *" 48 Ariz. 134, 59 P.2d 662.

The trial courts of this state were prior to the majority opinion precluded from granting discovery to a defendant in a criminal case for the reason that a confession was the private paper of the person who takes the pains and trouble of making it. The question was not open; it was stare decisis, and binding on the trial court. Cf. Bourjois Sales Corporation v. Dorfman, 273 N.Y. 167, 7 N.E.2d 30, 110 A.L.R. 1411. When the majority hold that "the trial court under its inherent powers had jurisdiction to enter the order in question" they are holding that the trial court had jurisdiction under its inherent powers to overrule this court. The trial court had the jurisdiction to be wrong, that is to commit error, but it did not have the slightest modicum of jurisdiction by way of inherent power, or otherwise, to enter a valid order changing the rule of law previously announced as controlling.

This court adopted the Rules of Criminal Procedure. for the Superior Courts of Arizona including Rule 195 [2] pursuant to legislative direction that the Supreme Court "shall regulate pleading, practice and procedure in judicial proceedings in all courts of the state". A.R.S. § 12–109, Laws of 1939, Chapter 8, Section 1. Concerning these rules we have said:

> " * * * The rules of criminal procedure are not fragmentary or makeshift. They purport to put into effect a new system, and a complete one so far as any system can be said to be complete in whose nature growth is inherent. * * *" State v. Chee, 74 Ariz. 402, 409, 250 P.2d 985, 989.

Rule 195 prescribes the circumstances and conditions which govern the inspection and copying of books, papers and documents in the hands of a prosecuting attorney. By holding that there is inherent power in the trial court to allow discovery of books, papers and documents under circumstances

---

2. "Rule 195. Right of defendant to discovery and inspection

"Upon *motion of a defendant at any* time after the filing of the indictment or information, the court may order the county attorney to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, *obtained from or belonging to the defendant* or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just." (Italics ours.)

Rule 195 is identical to Rule 16, Federal Rules of Criminal Procedure.

other than those included within Rule 195 the door is opened wide to each judge to adopt that practice which seems then most consistent with his own concept of what constitutes the due administration of justice.[3] This completely nullifies the Rules of Criminal Procedure as a consistent system for practice. Such power has been repeatedly denied. State v. Johnson, 80 Ariz. 45, 292 P.2d 465, and State ex rel. Mahoney v. Stevens, 79 Ariz. 298, 288 P.2d 1077. In the latter case we said:

"* * * If the magistrate's action in the instant case is contrary to the authority conferred upon him by the Rules of Criminal Procedure and applicable statutes, then no jurisdiction existed to render the particular order, * * *." 79 Ariz. 300, 288 P.2d 1078.

We think that the reasoning in United States v. Peltz, D.C., 18 F.R.D. 394, 406, 407, further points up why the courts of this state should not go beyond the scope of Rule 195:

"Opposed to this school of thought are those who argue that there are distinguishing features present in a criminal proceeding which necessitate sharply limited discovery provisions. The advocates of this point of view emphasize that there is a greater danger of perjury in criminal cases, and that since the defendant in a criminal case can refuse to testify at all, broader discovery provisions in criminal cases would really mean broader discovery only of the prosecution's case. Thus, Judge Learned Hand, in United States v. Garsson [D.C.S.D.N.Y., 291 F. 646], wrote:

"'Under our criminal procedure the accused has every advantage. While the prosecution is held rigidly to the charge, he need not disclose the barest outline of his defense. He is immune from question or comment on his silence; he cannot be convicted when there is the least fair doubt in the minds of any one of the twelve. Why in addition he should in advance have the whole evidence against him to pick over at his leisure, and make his defense, fairly or foully, I have never been able to see. * * * Our dangers do not lie in too little tenderness to the accused. Our procedure has been always haunted by the ghost of the innocent man convicted. It is an unreal dream. What we need to fear is the archaic formalism and the watery sentiment that obstructs, delays, and defeats the prosecution of crime.'

* * * * * *

"If the law with respect to pre-trial discovery of a defendant's statement

3. The majority bottom their decision on the statement "that *if the order in question were found to be essential to the due administration of justice,* respondent court did have jurisdiction to issue it under its inherent powers * * *."

in criminal cases is to be amended beyond the present provisions of Rule 16, that reform should rest upon something more solid than semantic subtlety. The subject is important to prosecutors, defendants and the community at large. The results of such amendment would be far-reaching. The question is controversial. Within the same district and circuit, judges and lawyers may well differ in their evaluation of the competing social policies that form the matrix of the problem, as well as in their appraisal of the practical factors involved in the administration and enforcement of the criminal laws.

"It is well to remember that we are dealing with a subject that is peculiarly within the Supreme Court's rule-making and rule-changing power. Should the Supreme Court deem it appropriate to consider the question whether Rule 16 should be amended to permit fuller discovery, the Supreme Court has available the traditional method of affording an opportunity to Bench and Bar, including prosecutors and law school professors, to hammer out their differences on the anvil of debate before an Advisory Committee. Through such a medium, judicial creativity in modernizing another aspect of procedural criminal law could express itself effectively. In this particular area

of the law, such a technique of reform is superior to the case-to-case decisional approach, with its concomitant uncertainty and conflicts, individualizing facts, and inarticulated basic assumptions of policy."

For the foregoing reasons we think the alternative writ should be made permanent.

LA PRADE, C. J., concurs.