467 P.2d 904

Robert Bruce MOORE, Jr., Petitioner,

v.

STATE of Arizona, Superior Court of the State of Arizona In and For the County of Pima, the Honorable Jack G. Marks, Judge of the Superior Court, and Rose Silver, Pima County Attorney, Respondents.

No. 9925.

Supreme Court of Arizona, In Banc.

April 15, 1970.

Krotenberg, Laber, Morrow & Lovallo, by Joseph A. Lovallo, Tucson, for petitioner.

Rose Silver, Pima County Atty., by Horton C. Weiss, Deputy County Atty., for respondents.

McFARLAND, Justice:

The sole question presented on this Petition for Special Action is whether the State is entitled to pre-trial discovery of certain psychiatric reports in the possession of the defendant.

Robert Bruce Moore, the defendant, stands charged with armed robbery and attempted murder. He duly filed notice, in both causes, of his intention to plead not guilty by reason of insanity in accordance with Rule 192, subd. A, Rules of Crim. Proc., 17 A.R.S.[1] Subsequently, the court granted the motions of the State and the defendant, and appointed two psychiatrists to examine the defendant as provided in § 13–1621, subd. C, A.R.S.,[2] and Rule 250, subd. A, Rules of Crim.Proc., 17 A.R.S.,[3] the reports to be furnished to the court and to counsel for both the State and the defendant.

A hearing was held under Rule 250, and as a result the court ruled that defendant was able to understand the proceedings and to assist in his defense. A further hearing date was scheduled under the bifurcated trial procedure of § 13–1621.01, A.R.S., to determine if the defendant was insane at the time the crimes were committed. The court granted both parties leave to reserve the right to call additional psychiatrists at such time.

At this point the State renewed prior motions to produce and inspect "names, addresses and reports of every psychiatrist who has examined the defendant." Such motions had been denied by the court on several prior occasions. The pertinent part of the motion follows:

"The Pima County Attorney, ROSE SILVER, by her Deputy, HORTON C. WEISS, respectfully moves this Court for an order requiring the defendant,

1. Rule 192. Plea of not guilty by reason of insanity or alibi; notice required; effect of failure to give notice
A. When the defendant pleads not guilty and proposes to show in evidence that he was insane or mentally defective at the time of the alleged commission of the offense charged, he shall at the time he pleads, or at any time thereafter but not later than four days before trial, file with the clerk and serve upon the county attorney a written notice of his intention. If the defendant fails to file and serve such notice, he shall not be entitled to introduce evidence tending to establish such insanity or mental defect, but the court may permit such evidence to be introduced when good cause for the failure to file and serve the notice is shown.

2. B. At any time after arrest or service with a summons, a person charged with a crime may petition the superior court to determine whether he suffers from a mental illness or defect which renders him unable to understand the proceedings against him or to assist in his own defense.
C. If the court determines that reasonable grounds exist, it shall appoint two or three impartial medical experts to examine the defendant and to testify regard-

ing his mental condition. The court shall order the defendant committed to a mental health facility for a period of thirty days or less for the examinations. The period of commitment or the place of examinations may be altered by the court upon a showing of good cause. The court shall make proper arrangements for security.

3. Rule 250. Examination of defendant's mental condition prior to or during trial; proceeding with trial or commitment of defendant to institution
A. If before or during the trial the court has reasonable ground to believe that the defendant, against whom an indictment has been found or information filed, is insane or mentally defective, to the extent that he is unable to understand the proceedings against him or to assist in his defense, the court shall immediately set a time for a hearing to determine the defendant's mental condition. The court may appoint two distinterested qualified experts to examine the defendant with regard to his present mental condition and to testify at the hearing. Other evidence regarding the defendant's mental condition may be introduced at the hearing by either party.

ROBERT BRUCE MOORE, JR., to produce the following for inspection by the State:

"1. Any and all papers, documents, reports or tangible objects which the defendant intends to use or introduce at his trial.

"2. The results of all tests and/or examinations of any sort (chemical, physical, psychological, psychiatric or biological) which will be the basis for testimony of witnesses which defendant intends to have testify at his trial.

"3. The names and addresses of all persons who performed tests and examinations and/or prepared reports set forth in 1 and 2 above.

"4. The names and addresses of all witnesses which the defendant intends to have appear and/or testify at his trial.

"5. The names and addresses of all psychologists and psychiatrists who have information relative to defendant's mental condition.

"6. Reports and results of tests and examinations conducted by persons set forth in 5 above."

The trial court denied the motion as to numbers 5 and 6, but granted the remainder, and, as a result, the defendant filed a Petition for Special Action with this Court. Immediately thereafter the trial court ordered an amendment to its minute entry on the order to produce and inspect "to truly reflect the intention of the court. * * *" The pertinent language of the amended order reads:

"With respect to items 1, 2, 3 and 4, it is Ordered that the motion to produce and inspect is granted; limited, however, to the defense of insanity; * * *"

On February 3, 1970, this Court ordered that an Alternative Writ of Prohibition issue to the Superior Court.

The main thrust of the defendant's argument is that Rule 195, supra, is a defendant's rule for discovery and makes no provision—nor does any other rule—for discovery by the prosecution. The State apparently concedes this to be so, but advances the contention that the trial court has inherent power to permit discovery, in the interests of justice, separate and apart from the rules. In support thereof, the State cites, among other cases, the opinions of this Court in State ex rel. Helm v. Superior Court, 90 Ariz. 133, 367 P.2d 6; State ex rel. Polley v. Superior Court, 81 Ariz. 127, 302 P.2d 263; and State ex rel. Mahoney v. Superior Court, 78 Ariz. 74, 275 P.2d 887.

The Mahoney case was decided prior to the promulgation of Rule 195, but nevertheless permitted a limited discovery under the inherent powers of the court. In Polley, after Rule 195, the inherent power of the court was sustained as follows:

"However, as to the second ground, we believe that *if the order in question were found to be essential to the due administration of justice,* respondent court did have jurisdiction to issue it under its inherent powers because a statute or rule of court is not the exclusive authority. Shores v. United States, [8 Cir., 174 F. 2d 838] supra, and Cf. the Demand case, [State ex rel. Mahoney v. Superior Court, 78 Ariz. 74, 275 P.2d 887] supra.

"It should be noted that while the inspection is not authorized under said Rule, the Rule itself does not express a policy prohibiting discovery; hence, the court is free under its inherent residual power to permit broader discovery. 67 Harv.L.R. 492, 498."

Then, in Helm, supra, this Court held:

"* * * we adhere to our decision in Polley that a trial court has a residuum of inherent power, notwithstanding the limitations of Rule 195, to order production and inspection when such is 'essential to the due administration of justice.'"

However, the latter two cases involved only the liberalization of the subject matter available for inspection, and all of them related to the defendant's rights—not the prosecution. This Court has never, either by rule or by decision, extended discovery

and inspection to the prosecution, a fact which the State readily acknowledges in its brief, where it is said:

"However, this Court has not seen fit to grant pretrial disclosure to the State. There is no reason why this 'inherent power' does not exist for the State as well as the defendant."

There may be many good reasons why the State should be provided with limited discovery rights but in an area as potentially volatile as that here involved " * * * we think it inadvisable to enlarge existing practice and procedure, which is limited by a specific Rule, by the exercise of inherent power on a case-to-case basis. * * *" State v. Thompson, 50 Del. 456, 134 A.2d 266. Opening pretrial discovery to the State involves many possible pitfalls. For example, how extensive can it be before it infringes on the defendant's constitutional rights, such as self-incrimination. Or, although statements made during the course of psychiatric examination under § 13–1621.01, A.R.S., are inadmissible at the trial on the question of guilt or innocence, are similar statements made to a private psychiatrist and "discovered" by the State equally inadmissible?

These and other problems require the development of adequate safeguards which can be best formulated under the formal rule-making procedure of this Court rather than the case-by-case basis.

We are cognizant that the State's position has much support in an ever-growing number of authorities. The federal practice permits discovery by the government, but this came about by a specific amendment, in 1966, to Rule 16, Fed.R.Crim.P., 18 U.S.C.A. The Advisory Notes to this Rule point up the position we take here:

"The extent to which pretrial discovery should be permitted in criminal cases is a complex and controversial issue. The problems have been explored in detail in recent legal literature, most of which has been in favor of increasing the range of

permissible discovery. [Citations omitted.] The rule has been revised to expand the scope of pretrial discovery. *At the same time provisions are made to guard against possible abuses.*" [Emphasis added.]

Notes of Advisory Committee, Rule 16, supra.

The Advisory Committee of the American Bar Association, in a tentative draft on Discovery and Procedure Before Trial advocates broad discovery on behalf of both the defendant and the prosecution. But the suggestions are in the form of proposed rules. That the Committee did not expect that the proposals be implemented by case law is apparent from a paragraph in the Introduction at page 4:

"The standards do not recommend a particular method of implementation. In some jurisdictions the adoption or modification of court rules may be appropriate; in others a combination of rules and legislation may be necessary or desirable. Purely on a cooperative basis, by agreement of counsel and the court, some federal districts have already adopted most of the standards on an *experimental* basis, * * *"

In the area of discovery by the accused, where the possibilities of infringement on constitutional rights are nil, this Court has developed the procedure on a case-by-case basis. This has culminated into a set of guidelines to be followed by trial courts as set forth in our recent opinion in State ex rel. Corbin v. Superior Court, 103 Ariz. 465, 445 P.2d 441. But the converse, pretrial discovery by the State, is fraught with constitutional problems. Each and every trial judge would be left to his own devices to determine where fair play in favor of the State ends and infringement on personal rights begins. A quote from Justice Struckmeyer's dissent in the Polley case, supra, dealing only with limitations on the scope of defendant's discovery is appropriate here. Although the majority did not agree it was applicable under the

facts of that case, it is particularly applicable to the instant case:

"Rule 195 prescribes the circumstances and conditions which govern the inspection and copying of books, papers and documents in the hands of a prosecuting attorney. By holding that there is inherent power in the trial court to allow discovery of books, papers and documents under circumstances other than those included within Rule 195 the door is opened wide to each judge to adopt that practice which seems then most consistent with his own concept of what constitutes the due administration of justice. This completely nullifies the Rules of Criminal Procedure as a consistent system for practice. Such power has been repeatedly denied. State v. Johnson, 80 Ariz. 45, 292 P.2d 465, and State ex rel. Mahoney v. Stevens, 79 Ariz. 298, 288 P.2d 1077. * * *

\* \* \* \* \* \*

"We think that the reasoning in United States v. Peltz, D.C., 18 F.R.D. 394, 406, 407, further points up why the courts of this state should not go beyond the scope of Rule 195:

\* \* \* \* \* \*

" 'If the law with respect to pre-trial discovery of a defendant's statement in criminal cases is to be amended beyond the present provisions of Rule 16, that reform should rest upon something more solid than semantic subtlety. The subject is important to prosecutors, defendants and the community at large. The results of such amendment would be far-reaching. The question is controversial. Within the same district and circuit, judges and lawyers may well differ in their evaluation of the competing social policies that form the matrix of the problem, as well as in their appraisal of the practical factors involved in the administration and enforcement of the criminal laws.

" 'It is well to remember that we are dealing with a subject that is peculiarly within the Supreme Court's rule-making and rule-changing power. Should the Supreme Court deem it appropriate to consider the question whether Rule 16 should be amended to permit fuller discovery, the Supreme Court has available the traditional method of affording an opportunity to Bench and Bar, including prosecutors and law school professors, to hammer out their differences on the anvil of debate before an Advisory Committee. Through such a medium, judicial creativity in modernizing another aspect of procedural criminal law could express itself effectively. In this particular area of the law, such a technique of reform is superior to the case-to-case decisional approach, with its concomitant uncertainty and conflicts, individualizing facts, and inarticulated basic assumptions of policy.' "

Therefore, it is the decision of this Court that the Alternative Writ of Prohibition heretofore issued is made Peremptory.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.