[No. 54970–2.  En Banc.  December 15, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL JOSEPH YATES, *Petitioner.*

Ronald D. Ness and Judith M. Mandel, for petitioner.

C. Danny Clem, Prosecuting Attorney for Kitsap County, and Irene K. Cleavenger, Deputy, for respondent.

*Michael J. Trickey* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae for petitioner.

*Norm Maleng, Prosecuting Attorney for King County,* and *Saul Gamoran, Deputy,* on behalf of Washington Association of Prosecuting Attorneys, amici curiae for respondent.

ANDERSEN, J.—

## FACTS OF CASE

This matter concerns a challenge to an order of the trial court granting the State's motion for pretrial discovery of "any tape recorded interviews, notes taken during any interviews and summaries of such interviews prepared by defendant's counsel or by their investigator *of witnesses listed by the State.*" (Italics ours.)[1] We affirm in part and reverse in part.

The defendant, Daniel Joseph Yates, is charged with aggravated first degree murder, for which the State is seeking the death penalty, and with two counts of attempted first degree murder. He also stands charged with unlawful possession of a pistol and three counts of first degree rape.

After the State filed its list of State's witnesses, listing the potential prosecution witnesses, defense counsel and/or defense counsel's investigator interviewed certain of the persons listed. The State was required to disclose to defense counsel the statements of all of the State's witnesses.[2] The defendant apparently does not intend to call any of these prosecution witnesses at trial. The State moved for discovery of transcripts of any tape–recorded statements, interview notes, or summaries of interviews with the State's witnesses made by defense counsel or their investigator in the course of their investigation of the case.

---

[1]Findings of Fact and Conclusions of Law and Order Regarding State's Motion for Discovery, at 3.

[2]*See* CrR 4.7(a)(1)(i).

The Superior Court for Kitsap County granted the discovery motion but provided:

> That in order to protect work product under CrR 4.7(f)(1) and any privileged material *the Court shall review in camera all such transcripts of tape recorded interviews, notes or summaries and will exclude those portions of the tape recorded interviews or notes which are work product as defined in CrR 4.7(f)(1) or any privileged material.*

(Italics ours.) Findings of Fact and Conclusions of Law and Order Regarding State's Motion for Discovery, at 3.

On motion of defense counsel, the trial court's discovery order was stayed pending direct review by this court.

Defendant's various objections to the trial court's order reduce to the following issue.

## ISSUE

Did the trial court abuse its discretion when it ordered defense counsel to produce for in camera review all transcripts of interviews, notes taken during such interviews and summaries of interviews of State's witnesses prepared by defense counsel and the defense investigator?

## DECISION

CONCLUSION. To the extent the trial court's order encompassed the pretrial disclosure of statements, signed or unsigned, recorded or written, given by potential prosecution witnesses during interviews with defense counsel or their investigator, such order was not an abuse of the trial court's discretion. The notes taken during such interviews, as well as the summaries of interviews prepared by defense counsel or their investigator, should not be included in this pretrial discovery order; they may, however, be subject to disclosure at trial if counsel or the investigator should be called as a witness by the defense for the purpose of impeaching the testimony given by a previously interviewed prosecution witness.[3]

---

[3]*United States v. Nobles,* 422 U.S. 225, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975).

■■ Generally speaking, the scope of discovery is within the trial court's sound discretion and the decisions of the trial court will not be disturbed absent a manifest abuse of that discretion.[4] In this state, the criminal discovery provisions of the Superior Court Criminal Rules, CrR 4.7, guide the trial court in the exercise of its discretion over discovery. CrR 4.7 is a reciprocal discovery rule, with the prosecutor's and defendant's obligations being separately listed, and with other subsections of the rule encompassing additional and discretionary disclosures and matters not subject to disclosure also being carefully set out.

The principles underlying CrR 4.7 have been stated as follows:

> In order to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross–examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protections of persons, effective law enforcement, the adversary system, and national security.

Criminal Rules Task Force, *Washington Proposed Rules of Criminal Procedure* 77 (West Pub'g Co. ed. 1971).[5] Guidance in construing the criminal discovery rule is also found in CrR 1.2:

> These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, effective justice, and the elimination of unjustifiable expense and delay.

We cannot agree with defendant that the trial court's order here was entirely beyond the scope of the rules.

---

[4]*State v. Mak,* 105 Wn.2d 692, 704, 718 P.2d 407, *cert. denied,* 479 U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986); *State v. Boehme,* 71 Wn.2d 621, 633, 430 P.2d 527 (1967), *cert. denied,* 390 U.S. 1013 (1968).

[5]Quoting *ABA Standards Relating to Discovery and Procedure Before Trial,* Std. 1.2, at 34 (Approved Draft, 1970).

Rather, bearing the foregoing principles in mind, we conclude that CrR 4.7 gave the trial court the authority to here order production of the recorded or transcribed statements of potential prosecution witnesses that were taken during interviews of those persons by defense counsel or their investigator. CrR 4.7(b)(2)(x) specifically provides:

> (2) Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, *the court* on motion of the prosecuting attorney or the defendant, *may require* or allow the defendant to:
>
> . . .
>
> (x) Allow *inspection of physical or documentary evidence in defendant's possession*;

(Italics ours.)

Allowing the State access to the written and recorded statements of the witnesses fosters the goal of preventing surprise, which could cause trial disruption and further continuances of the trial. Counsel for the State in the exercise of prudence would undoubtedly want to give the State's witnesses the opportunity to review their statements in order to refresh their recollections prior to testifying. We see no reason why the State and the State's witnesses should not also have the opportunity to review the statements these witnesses may have given to the defense, particularly since the trial of this case was considerably delayed at the request of the defense, and since the State was required to provide the defense with copies of the statements of the State's witnesses. Under modern trial practice, the possibility of the defense using statements it took to ambush or "sandbag" State's witnesses on cross examination is not a valid reason to reverse the trial court's order.[6]

Our decision herein also accords with the clear policy this court expressed over two decades ago:

> At this point, we momentarily pause to observe that the rules of discovery are designed to enhance the search for truth in both civil and criminal litigation. And, except

---

[6]*See State v. Nelson,* 14 Wn. App. 658, 664, 545 P.2d 36 (1975).

where the exchange of information is not otherwise clearly impeded by constitutional limitations or statutory inhibitions, the route of discovery should ordinarily be considered somewhat in the nature of a 2–way street, with the trial court regulating traffic over the rough areas in a manner which will insure a fair trial to all concerned, neither according to one party an unfair advantage nor placing the other at a disadvantage.

*State v. Boehme,* 71 Wn.2d 621, 632–33, 430 P.2d 527 (1967), *cert. denied,* 390 U.S. 1013 (1968). The United States Supreme Court expressed similar sentiments in *United States v. Nixon,* 418 U.S. 683, 709, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974):[7]

We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence.

Production of the statements of the prosecution witnesses in this case increases the chance that all relevant facts will be developed in an efficient and fair manner.

Defendant argues, however, that disclosure of these statements deprives him of his constitutional rights under the fifth, sixth and fourteenth amendments to the United States Constitution,[8] and violates the attorney–client privilege and the work product doctrine. We disagree. We perceive no constitutional basis for preventing disclosure to the

---

[7]*See also Nobles,* at 230–31; *People v. Small,* 631 P.2d 148, 158 (Colo.), *cert. denied,* 454 U.S. 1101 (1981).

[8]The defendant also argues that the trial court's order violates his rights guaranteed by article 1, sections 3, 9 and 22 (amendment 10) of the State Constitution. Because he does not argue that the state constitution provides greater protection than the federal constitution, we decline to further consider these state constitutional claims. *State v. Wethered,* 110 Wn.2d 466, 472, 755 P.2d 797 (1988).

State of the recorded and written statements given by prosecution witnesses to defense counsel or their investigator.

■ The right against compulsory self–incrimination, guaranteed by the Fifth Amendment, is personal to the defendant.[9] "[I]f the production does not involve defendant's own communication . . . the privilege would not apply no matter when disclosure is required." 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.4(g), at 523 (1984). The statements in question were not made by the defendant, therefore, the trial court's disclosure order does not violate his right against compulsory self–incrimination.[10]

Similarly, we perceive no violation of defendant's right to effective assistance of counsel. We cannot conclude that the trial court's order would have a chilling effect on either trial preparation by defense counsel or on the attorney–client relationship such as to deny defendant his right to counsel.[11] To the contrary, we would expect diligent defense counsel to continue to interrogate potential prosecution witnesses whenever reasonably possible. Experienced members of the trial bar will and ordinarily should seek to ascertain what every witness will likely testify to at trial. Prudent practice, especially in a criminal case as serious as this one, calls for no less.[12]

To support his right to counsel argument, defendant relies on *In re Terkeltoub,* 256 F. Supp. 683 (S.D.N.Y. 1966), in which the trial court found appropriate an attorney's refusal to answer questions when he was asked to testify before a grand jury about his work defending a client in a criminal action. The ordered production to the prosecutor

---

[9]*Nobles,* at 234.

[10]*See also Lepley v. Lycoming Cy. Court of Common Pleas,* 481 Pa. 565, 575–76, 393 A.2d 306 (1978); *Small,* at 158.

[11]*See Lepley,* at 576–77.

[12]*State v. Williams,* 80 N.J. 472, 484–85, 404 A.2d 34 (1979) (Schreiber, J., dissenting).

of the statements of the State's own witnesses here is a far cry from forcing an attorney to be a witness in a matter related to a client's defense.

As for due process, the United States Supreme Court has made it clear that

> [t]he growth of such discovery devices is a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system. As we recognized in *Williams [v. Florida,* 399 U.S. 78, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (1970)], nothing in the Due Process Clause precludes States from experimenting with systems of broad discovery designed to achieve these goals.

*Wardius v. Oregon,* 412 U.S. 470, 474, 37 L. Ed. 2d 82, 93 S. Ct. 2208 (1973). Due process has less to do with the amount of discovery and more to do with "the balance of forces between the accused and his accuser."[13] As previously observed, CrR 4.7 is a reciprocal criminal discovery provision, with some forms of discovery explicitly provided for and others left to the trial court's discretion, as in the case of the witness statements here ordered to be produced.

Finally, we address defendant's contention that the trial court's order violates the work product doctrine and attorney–client privilege. Recorded or transcribed interviews of the prosecution witnesses are unlikely to contain the "opinions, theories or conclusions" of defense counsel.[14] To the extent they should somehow happen to do so, however, the in camera review ordered by the trial court in this case was expressly for the purpose of allowing it to excise matters properly excludable as work product or protected under the attorney–client privilege.

In conclusion, as the American Bar Association standards emphasize:

---

[13]*Wardius v. Oregon,* 412 U.S. 470, 474, 37 L. Ed. 2d 82, 93 S. Ct. 2208 (1973).

[14]*See State v. Strandy,* 49 Wn. App. 537, 540, 745 P.2d 43 (1987), *review denied,* 109 Wn.2d 1027 (1988).

Generally, an attorney can be effective in a trial only to the extent that he has the information necessary to plan effectively. Quick wits may be the mark of the trial lawyer, but they are not always sufficient for the orderly exposition and testing of evidence, which is the purpose of a trial. Where planning is foreclosed by lack of information, as has long been the custom in much of criminal litigation, surprise and gamesmanship usually govern the conduct of the proceedings. The result is too often a general obfuscation of the issues. In spite of its obvious entertainment qualities, trial gamesmanship by way of obfuscatory tactics is generally offensive to the dignity of the court as an institution and destructive of respect for legal processes. Where life, liberty and protection of communities from crime are the stakes, gamesmanship is out of place.

*ABA Standards Relating to Discovery and Procedure Before Trial,* Std. 1.1, Commentary at 31 (Approved Draft, 1970). In the interest of reducing possible surprise and gamesmanship, we affirm the exercise of the trial court's discretion in this case; we uphold the trial court's order to the extent it ordered that all recorded or written statements of potential prosecution witnesses which were taken by defense counsel or the defense investigator be provided to the State.

UTTER, BRACHTENBACH, CALLOW, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.

DORE, J. (dissenting)—I dissent.

If a change in the criminal rules is needed, this court should exercise its inherent power and promulgate new rules in a regular manner. Instead, the majority shirks this responsibility and opens a critically important phase of criminal proceedings to the unguided exercise of discretion by trial courts. With all due respect to our trial judges, the inevitable result will be injustice. The conduct of criminal discovery will be irregular, unpredictable and therefore inherently unfair.

No one should mistake the fact that the majority is changing the rules of criminal discovery, and that the change is a significant and unprecedented expansion of the State's discovery powers in criminal cases. The majority recognizes an inherent power in trial courts to order the defendant to produce evidence for examination by the State. Like all such expansions of state power, this rule is supported by a simplistic argument with superficial appeal: the notion that the State and the defendant ought to have equal and symmetrical discovery powers. On closer examination, however, the magnitude of the change and its unfairness are clear.

### THERE IS NO AUTHORITY FOR THIS DISCOVERY ORDER UNDER THE CRIMINAL RULES

Prior to 1973, Washington by statute granted the prosecution and the defense limited pretrial discovery. Both were required to exchange lists of witnesses which they intended to call at trial. Former RCW 10.37.030, *repealed by* Laws of 1984, ch. 76, § 26, p. 462 (superseded by CrR 4.7). In addition, a defendant was required to give advance notice of intent to raise an alibi defense, stating the names and addresses of any alibi witnesses. Former RCW 10.37-.033, *repealed by* Laws of 1984, ch. 76, § 26, p. 462 (superseded by CrR 4.7). As to facts, documents or other items that were not discoverable by statute, the grant or denial of a pretrial discovery motion was left to the discretion of the trial judge, subject to review for manifest abuse of discretion. *State v. Gilman*, 63 Wn.2d 7, 8–9, 385 P.2d 369 (1963); *State v. Thompson*, 54 Wn.2d 100, 103, 338 P.2d 319 (1959); see Comment, *Five Years Under State v. Thompson: Criminal Pretrial Discovery in Washington*, 39 Wash. L. Rev. 853 (1964).

In 1973, the Supreme Court adopted the Superior Court Criminal Rules. 82 Wn.2d 1114 (1973). These rules were promulgated and adopted pursuant to the court's inherent power to govern court procedure. Const. art. 4, § 1; *State v. Fields*, 85 Wn.2d 126, 129, 530 P.2d 284 (1975); *see* RCW

2.04.190. The criminal rules, like all court rules, are subject to the same rules of construction as statutes. *State v. McIntyre,* 92 Wn.2d 620, 622, 600 P.2d 1009 (1979); *State v. Berry,* 31 Wn. App. 408, 411, 641 P.2d 1213 (1982). The court will not read into a statute matters which are not there nor modify a statute by construction. *King Cy. v. Seattle,* 70 Wn.2d 988, 991, 425 P.2d 887 (1967).

The superficial appeal of the majority's argument rests on the facile assumption that the discovery powers of the State and the defendant are symmetrical. Under the criminal rules as they now exist, that is clearly not the case. A criminal defendant has a limited obligation to provide discovery. Generally, a defendant must provide the prosecution discovery in four areas: the names and addresses of witnesses the defense intends to call, together with any written or recorded statements and the substance of any oral statements, CrR 4.7(b)(1); nontestimonial identification evidence, CrR 4.7(b)(2)(i)–(viii); the nature of any defense, including a list of alibi witnesses, CrR 4.7(b)(2)(ix), (xi)–(xiv); and reports or testimony of experts which the defendant intends to use at trial, CrR 4.7(g).

In contrast to a defendant's limited obligations, the State has a broad obligation to provide discovery. CrR 4.7(a)(1)–(2) sets out a comprehensive list of tangible and documentary evidence, and reports of examinations and tests which the prosecution must disclose to the defendant. Included in this list are the names and addresses of witnesses the State intends to call at trial, together with any written or recorded statements and the substance of any oral statements of such witnesses. CrR 4.7(a)(1)(i). The duty to disclose covers any material or information which tends to negate the defendant's guilt. CrR 4.7(a)(3). CrR 4.7(c) permits the defense to request additional disclosures from the State and CrR 4.7(d) allows the defense to request the State or the court to obtain discoverable material from third parties.

None of these rules authorizes the discovery granted by the trial court here. The most likely possibility, CrR

4.7(b)(1), sets forth the information and material that is subject to disclosure by the defense to the State. That subsection provides in part:

**(b) Defendant's Obligations.**
(1) Except as is otherwise provided as to matters not subject to disclosure and protective orders, the defendant shall disclose to the prosecuting attorney the following material and information within the defendant's control no later than the omnibus hearing: *the names and addresses of persons whom the defendant intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witness.*

(Italics mine.)

Applying ordinary rules of statutory construction, it is clear that subsection (b)(1) provides for prosecutorial discovery of statements of witnesses the defense intends to call at trial. It does *not* require the defendant to disclose recordings, notes or summaries of defense interviews with witnesses whom the defense *does not* intend to call at trial. That being the case, the discovery order entered in this case plainly exceeds the scope of discovery authorized by CrR 4.7(b)(1).

The only other possible source of authority for the trial court's order would be CrR 4.7(e), which governs discovery in the discretion of the trial court. Section (e) provides in part:

**(e) Discretionary Disclosures.**
(1) Upon a showing of materiality to the preparation *of the defense,* and if the request is reasonable, the court in its discretion may require *disclosure to the defendant* of the relevant material and information not covered by sections (a), (c) and (d).

(Italics mine.) This is a general "catchall" provision allowing the trial court to order disclosure of items not specified in the rule upon a showing of materiality to the defense.

By its plain wording this provision provides that *only the defendant* is entitled to the discretionary disclosure of information not covered by the discovery rule. The rule

contains no provision granting trial courts discretionary authority to expand on the list of items discoverable by the prosecution. If the rule permits a trial court discretion to order prosecutorial discovery with respect to matters outside the scope of CrR 4.7(b), as the State contends, the pertinent part of CrR 4.7(e) would read:

> (1) Upon a showing of materiality to the preparation of the defense [or the prosecution], and if the request is reasonable, the court in its discretion may require disclosure to the defendant [or the State] of the relevant material and information not covered by sections (a), (c) and (d) [or section (b), respectively].

As actually written, however, the rule grants only the defense the opportunity for discretionary discovery. CrR 4.7(e) does not authorize the discovery order entered in this case.

Since the trial court's order in this case clearly exceeds the criminal rules, it is an abuse of discretion.

### A Trial Court Has No Inherent Power To Grant Discovery Beyond the Scope of the Criminal Rules

By upholding the trial court's order in this case, the majority authorizes trial courts everywhere to grant the State expanded powers not provided for in the criminal rules. Apparently, the majority believes that a trial court has some inherent power to grant the State this broad discovery. The majority cites no authority for that proposition, however, because there is none. In fact, the great weight of authority and logic is to the contrary.

The rule that a trial court has broad discretion to order discovery can be found only in cases that predate the adoption of the criminal discovery rules. *See Gilman,* at 8; *Thompson,* at 103. Post–rule cases have upheld the trial court's exercise of discretion only where CrR 4.7 grants the trial court discretion to order discovery. *See, e.g., State v. Mak,* 105 Wn.2d 692, 704–05, 718 P.2d 407, *cert. denied,* 479 U.S. 995 (1986); *State v. Espinosa,* 47 Wn. App. 85, 89, 733 P.2d 1010 (1987); *State v. Mines,* 35 Wn. App. 932, 938,

671 P.2d 273 (1983). This court has never extended criminal discovery by judicial discretion beyond that expressly authorized by CrR 4.7.

This accords with the view as stated in 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.4, at 511 (1984):

> In the area of prosecution discovery, in contrast to defense discovery, trial courts generally are prohibited from exercising their inherent power to require disclosure beyond that specifically noted in the discovery provision. Prosecution discovery is viewed as so controversial that the failure of the statute or court rule to specifically authorize a particular type of disclosure is taken as indicating the rulemakers did not intend to allow the prosecution such discovery.

*Accord, State v. Whitaker,* 202 Conn. 259, 520 A.2d 1018, 1022–23 (1987); *Richardson v. District Court,* 632 P.2d 595, 600 (Colo. 1981); *People v. Williams,* 87 Ill. 2d 161, 429 N.E.2d 487 (1981); *State v. Sandstrom,* 225 Kan. 717, 595 P.2d 324, 331–32 (1979); *Moore v. State,* 105 Ariz. 510, 467 P.2d 904, 907–08 (1970); *State v. Thompson,* 134 A.2d 266, 268 (Del. Super. Ct. 1957); *see generally* Annot., *Right of Prosecution to Discovery of Case–Related Notes, Statements, and Reports—State Cases,* 23 A.L.R.4th 799, 809–13 (1983); *but see Scott v. State,* 519 P.2d 774, 776–77 (Alaska 1974).

The courts adopting the majority view conclude that a rule that allows a trial court discretion to expand or restrict the scope of discovery on a case–by–case basis is inconsistent with the purpose of the criminal discovery rules. In *Richardson,* the trial court ordered the defense to produce the statements of nonexpert witnesses the defense intended to call at trial. Unlike CrR 4.7, the Colorado criminal rules do not permit prosecutorial discovery of such statements. The Colorado Supreme Court reversed and stated:

> The exclusion of non–expert witnesses' statements from prosecutorial discovery, far from being an oversight, reflects a purposeful decision to prevent the impairment of constitutional rights that arguably could result from a rule permitting the court to enlarge the categories of

prosecutorial discovery on the basis of an *ad hoc* evaluation of each case. In keeping with this purpose, the trial court's authority to grant discovery likewise must be limited to the categories expressly set forth in the rule.

*Richardson,* at 599; *accord, United States v. Peltz,* 18 F.R.D. 394, 406–07 (S.D.N.Y. 1955).

Likewise, in *Moore,* the Arizona Supreme Court held that a trial court has no inherent power to grant the State broader discovery powers than those granted by that state's criminal rules.

> "Rule 195 prescribes the circumstances and conditions which govern the inspection and copying of books, papers and documents in the hands of a prosecuting attorney. By holding that there is inherent power in the trial court to allow discovery of books, papers and documents under circumstances other than those included within Rule 195 the door is opened wide to each judge to adopt that practice which seems then most consistent with his own concept of what constitutes the due administration of justice. This completely nullifies the Rules of Criminal Procedure as a consistent system for practice. Such power has been repeatedly denied.

*Moore,* at 514 (quoting *State ex rel. Polley v. Superior Court,* 81 Ariz. 127, 134–35, 302 P.2d 263 (1956) (Struckmeyer, J., dissenting)).

The exercise of inherent power or discretion over prosecutorial discovery would be inconsistent with the purpose of Washington's criminal rules. That purpose is to

> provide for the just determination of every criminal proceeding. [The rules] shall be construed to secure simplicity in procedure, fairness in administration, effective justice, and the elimination of unjustifiable expense and delay.

CrR 1.2. Washington's criminal rules were carefully drafted by this court to balance the competing interest in the area of criminal discovery and are designed to ensure uniform enforcement of the rules. Judges and lawyers may well differ in their evaluation of the competing interests that are now reflected in the criminal rules. Allowing each trial

judge discretion to adopt discovery practices on a case–by–case basis would nullify the criminal rules as a consistent, fair and effective system for practice.

The majority argues that the trial court's order is justified by need to eliminate trial by surprise. However, we have always recognized that that policy is served by our existing rule, CrR 4.7. *State v. Coe,* 101 Wn.2d 772, 783, 684 P.2d 668 (1984). Furthermore, upholding the trial court's discovery order will not advance this policy. The State can hardly make a claim of surprise and resulting prejudice where, as here, the witness statements were taken from the *State's* own witnesses.[15] Prohibiting discovery will not hamper the State's preparation of its case. The State has adequate investigative resources and access to its own witnesses. If the State wants to know what the witnesses told the defense, it can ask them what they said. Finally, the State makes no claim that the witness statements are material to the preparation of its case. *See* CrR 4.7(e)(1). In the absence of such a claim, it would appear that the State desires the power to go on a general "fishing expedition" into the files of defense counsel.

### If a New Rule is Needed This Court Should Issue One

If an expansion of the State's power of discovery is called for, the proper way for this court to recognize that power is to promulgate a rule to that effect. This is an area where we must proceed with caution. While I agree with the majority's conclusions regarding this defendant's constitutional claims, we must not lose sight of the fact that there are substantial constitutional questions involved in granting the State discovery against the defendant.

The recognition of certain discovery rights for the government in criminal cases has been a fairly recent development. *See* 1 C. Wright, Federal Practice and Procedure: Criminal § 251 (1969). The caution with which

---

[15]An issue, not presented here, would arise if the defense were to use the witness statements or call the investigator to impeach the State's witnesses at trial.

both courts and legislatures have embraced the concept rests in large part on a proper respect for the Fifth Amendment's guarantee against self–incrimination. Additional inhibition stems from concern over the impact of prosecutorial discovery on such related matters as the Sixth Amendment's guarantee of effective assistance of counsel, the attorney–client privilege, and the so–called "work product" doctrine recognized in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

*Middleton v. United States,* 401 A.2d 109, 115–16 (D.C. 1979). The majority's argument in favor of symmetrical discovery in criminal cases is too simplistic. The fact is the defendant has rights the State does not. The majority, however, is not sensitive to the constitutional dimensions of this question.

Given the sensitivity of this question, the proper way to go about making a change would be to exercise our inherent rulemaking power. With all due respect to our State's trial judges, it is too much to expect that they would arrive at a consistent, uniform and fair set of results on the difficult constitutional questions which the issue of prosecutorial discovery raises. The Arizona Supreme Court recognized this in *Moore.*

> "'It is well to remember that we are dealing with a subject that is peculiarly within the Supreme Court's rule–making and rule–changing power. Should the Supreme Court deem it appropriate to consider the question whether Rule 16 should be amended to permit fuller discovery, the Supreme Court has available the traditional method of affording an opportunity to Bench and Bar, including prosecutors and law school professors, to hammer out their differences on the anvil of debate . . . In this particular area of the law, such a technique of reform is superior to the case–to–case decisional approach, with its concomitant uncertainty and conflicts, individualizing facts, and inarticulated basic assumptions of policy.'"

*Moore,* at 514 (quoting *State ex rel. Polley v. Superior Court,* 81 Ariz. 127, 136, 302 P.2d 263 (1956) (Struckmeyer, J., dissenting)).

By upholding the discovery order in this case, the majority chooses a case–by–case approach which will inevitably result in injustice.

CONCLUSION

The majority would do well to heed the words of the court in *Middleton v. United States,* 401 A.2d 109, 121 (D.C. 1979):

> However appealing the notion of full disclosure may be in the abstract, important constitutional and societal interests affected by the criminal discovery process counsel against a casual acceptance of such a major revision of the established statutory schemes.

The change the majority makes in the balance of power between the State and the accused is profound, and it makes the change casually. If the change is needed, and I doubt it very much, the court should take the responsibility for promulgating a rule to that effect. Affirming the trial court's order in this case is the wrong way to go about making such a profound change in the law.

I would reverse.

PEARSON, C.J., and DOLLIVER, J., concur with DORE, J.