John Michael **RADFORD**, Petitioner,

v.

**Roy R. STEWART**, Sheriff of Yellowstone County, Montana, or any other person having custody of John Michael Radford, Respondent.

Civ. No. 862.

United States District Court,
D. Montana,
Billings Division.

Dec. 22, 1970.

---

Charles F. Moses, Charles F. Secrest, Billings, Mont., for petitioner.

Robert L. Woodahl, Atty. Gen. of Mont., Robert P. Gannon, Asst. Atty. Gen., Helena, Mont., for respondent.

## OPINION AND ORDER

BATTIN, District Judge.

Petitioner, a state prisoner, was convicted on the verdict of a jury of first degree murder and first degree assault. He is presently incarcerated in the Montana State Penitentiary. On March 9, 1970, he filed in this court a petition for a writ of habeas corpus pursuant to Title 28 U.S.C. Section 2254. Petitioner is represented by the same counsel who represented him at his trial. Respondent, through the Attorney General of the State of Montana, filed a return to the court's order to show cause why the writ should not be granted. Both parties have filed briefs in support of their positions. Hearings were held on May 6, 1970, and September 11, 1970.

Petitioner contends the Revised Codes of Montana, 1947, Section 95–1803(d), violates the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. That section provides as follows:

"For purpose of notice only and to prevent surprise, the defendant shall furnish to the prosecution and file with the clerk of the court at the time of entering his plea of not guilty or within ten (10) days thereafter or at such later time as the court may for good cause permit, a statement of intention to interpose the defense of insanity, self-defense or alibi. If the defendant intends to interpose any of these defenses, he shall also furnish to the prosecution and file with the clerk of the court, the names and addresses of all witnesses to be called by the defense in support thereof. The defendant may, prior to trial, upon motion and showing of good cause, add to the list of witnesses the names of any additional witnesses. After the trial commences, no witnesses may be called by the defendant in support of these defenses, unless the name is included on such list, except upon good cause shown."

■ Prior to his trial, petitioner moved the state district court for an order relieving him from the requirements of Section 95–1803(d). The trial court ruled that petitioner's motion be deferred for determination at trial. Petitioner, with two other criminal defendants, then petitioned the Montana Supreme Court for a writ of supervisory control, alleging that the statute was unconstitutional, and seeking to be relieved of its operation. The Supreme Court denied the writ and ruled that the statute was constitutional on its face. State ex rel. Sikora v. District Court, 462 P.2d 897 (1969). Petitioner has exhausted his state remedies since the issue presented here has already been presented once to the highest court of this state. Schiers v. California, 333 F.2d 173 (9 Cir. 1960).

■ The question for decision is whether the application of Section 95–1803(d) denied petitioner due process of law under the Fourteenth Amendment by violating either petitioner's Fifth Amendment right to remain silent or his

Sixth Amendment right to compulsory process. In *Sikora,* the Montana Supreme Court stated, at 462 P.2d 902:

"Thus, this type of statute does not infringe on the privilege against self-incrimination rather it sets up a wholly reasonable rule of pleading which in no manner compels a defendant to give evidence other than that which he will voluntarily and without compulsion give at trial.

"\* \* \*

"The code provides many safeguards to defendants—substitution of a judge and discovery proceedings of a broad nature—to name two. In its attempt to achieve fairness, the state as well as the defendant is considered. Where meritorious defenses exist, notice to prevent surprise is certainly desirable; and, under our interpretation here, good cause for a delay in asserting the defenses of insanity and self-defense may be shown as the right against self-incrimination. Accordingly, we hold that the statute on its face is constitutional. We recognize that it may be applied unconstitutionally, but until that problem occurs we shall not speculate on it."

Although petitioner did not interpose the defense of alibi, the court has little difficulty with the alibi portion of Section 95–1803(d) as it relates to the Fifth Amendment. Since the commencement of this suit, the United States Supreme Court held "that the privilege against self-incrimination is not violated by a requirement that the defendant give notice of an alibi defense and disclose his alibi witnesses." Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 1897, 26 L.Ed.2d 446 (1970). The constitutionality of this portion of petitioner's contention is therefore settled. The Supreme Court, however, did not decide whether the notice of alibi rule violates the Sixth Amendment. The court stated, at 90 S.Ct. 1897, Note 14:

"We emphasize that this case does not involve the question of the validity of the threatened sanction, had petitioner chosen not to comply with the notice-of-alibi rule. Whether and to what extent a State can enforce discovery rules against a defendant who fails to comply, by excluding relevant, probative evidence is a question raising Sixth Amendment issues which we have no occasion to explore. Cf. brief for *amicus curiae,* 17–26. It is enough that no such penalty was exacted here."

In this case, after the decision of the Montana Supreme Court, petitioner provided notice that he intended to rely on the defense of insanity or self-defense, or both. He did not interpose the defense of alibi, nor did he provide notice of his intention to do so. No evidence favorable to petitioner was excluded by the application of the alibi portion of Section 95–1803(d). This court, therefore, is not confronted with the question of whether petitioner's constitutional rights were violated by the notice of alibi provision.

Most of the decisions concerned with notice statutes involve the defense of alibi. People v. Lopez, 60 Cal.2d 223, 32 Cal.Rptr. 424, 384 P.2d 16 (1963); Rider v. Crouse, 357 F.2d 317 (10 Cir. 1966); State v. Angeleri, 51 N.J. 382, 241 A.2d 3 (1968), cert. den. 393 U.S. 951, 89 S.Ct. 372, 21 L.Ed.2d 362; Cantillon v. Superior Court for the County of Los Angeles, 305 F.Supp. 304 (C.D. Cal.1969). Petitioner argues that a very fundamental difference exists between the defense of alibi and the defenses of insanity and self-defense. Alibi, he points out, says in effect, "I did not commit the act charged because I was not there." Insanity and self-defense on the other hand say, "I did commit the act charged but I am legally excused." As applied to self-defense and insanity, petitioner argues that Section 95–1803(d) requires a defendant to confess the crime and provide a list of witnesses if he wishes to exercise his Sixth Amendment right to call witnesses at his trial.

Section 95–1803(d) is a discovery statute. In speaking of the time for disclosure in a criminal case Mr. Justice Traynor, Chief Justice of the California Supreme Court, stated in 39 N.Y. Law Review 228, 248–249 (1966), as quoted in United States v. Fratello, 44 F.R.D. 444, 449 (D.C.1968):

"Neither the privilege against self-incrimination nor the due process requirements of a fair trial fix the time when the prosecution has presented its evidence at the trial as the only procedural hour at which the defendant can be required to make his decision whether to remain silent or to present his defense. Surely he can be required to make that decision before the trial if he is given discovery of the prosecutor's case before the trial."

The United States Supreme Court in *Williams, supra,* 399 U.S. 78, 90 S.Ct. at page 1898, also pointed out that a notice statute advances the time for disclosure:

"At most, the rule only compelled petitioner to accelerate the timing of his disclosure, forcing him to divulge at an earlier date information which the petitioner from the beginning planned to divulge at trial. Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself."

The court agrees with this reasoning. As applied to self-defense and insanity, four questions must be examined: (1) Whether discovery of evidence by the prosecution as a result of the notice required by Section 95–1803(d) violates the Fifth Amendment; (2) whether Section 95–1803(d) requires a defendant to make an unconstitutional choice between remaining silent or calling witnesses in his own behalf; (3) whether the filing of a notice stating an intention to interpose the defense of insanity or self-defense, or both, violates the Fifth Amendment; and (4) whether the lack of a provision in Section 95–1803(d) requiring reciprocity between the names of defense witnesses and the names of prosecution rebuttal witnesses renders that section unconstitutional.

## DISCOVERY BY PROSECUTION

Section 95–1803(d) advances the time for a defendant to make the choice of whether or not to speak. The statute requires the choice to be made within ten days after arraignment if a defendant intends to use one or more of the enumerated defenses. Without the statute, the latest possible time a defendant may choose to speak is after the prosecution has presented its case. As a practical matter, however, in jurisdictions without the statute, the choice is made far in advance of trial.

The existence of the statute arguably creates a potential abuse. Nothing prevents the state from using evidence it obtains through a defendant's notice or under Rule 16 of the Federal Rules of Criminal Procedure as part of its case-in-chief. Cases may arise where the state is able to make a *prima facie* case only with the aid of evidence it obtains as a result of a defendant's notice. Thus, a defendant, by speaking in advance of trial, would provide the prosecution with a case against him sufficient to survive a motion for a directed verdict. In this situation, the right to remain silent under the Fifth Amendment may be violated. United States v. Fratello, *supra.*

The constitutionality of Section 95–1803(d), when the notice results in a *prima facie* case for the prosecution, need not be decided here. The question is not presented. As shown by the affidavit of the Yellowstone County Attorney, no investigation was undertaken of the witnesses petitioner named and no advantage was taken of petitioner's notice in presentation of the state's case-in-chief. In fact, petitioner was allowed, without objection from the prose-

cution, to call two witnesses in support of his defense of insanity who were not named on his notice.

## FIFTH—SIXTH CONFLICT

Petitioner contends that Section 95–1803(d) prevents a defendant from having the advantage of both the right to silence, guaranteed by the Fifth Amendment, and the right to subpoena witnesses in his own behalf, guaranteed by the Sixth Amendment. If a defendant, he argues, chooses not to file the notice but to stand mute, then later decides to call witnesses but is denied them by court order under Section 95–1803(d), a violation of the Sixth Amendment exists. The court can envision situations where a violation may exist. Assume, for example, that a defendant tells his attorney almost nothing and states that he chooses to remain silent. At trial, the attorney sees a strong defense in self-defense. He so advises his client who then elects to take the stand and call witnesses in his own behalf. But the trial court denies him the right to call witnesses since the required notice has not been filed. This situation, however, where the defendant elects in the first instance to remain silent and not to file the notice is not presented here. The constitutionality of Section 95–1803(d) under such circumstances need not be decided in this case.

The court is presented here with the converse situation, namely, where the defendant files the notice, thus electing not to remain silent, and calls witnesses at his trial. Before determining whether the statute compels an unconstitutional choice in this situation, it is necessary to first determine whether the mere filing of the notice violates the Fifth Amendment.

## THE NOTICE AND THE FIFTH

By stating that he would rely on self-defense or insanity or both, was peti-tioner compelled to incriminate himself? As previously discussed, Section 95–1803(d) advances the time for a defendant to choose whether or not to remain silent. On this point, the Supreme Court stated in *Williams, supra,* 90 S.Ct. at 1897:

"The defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction. When he presents his witnesses, he must reveal their identity and submit them to cross examination which in itself may prove incriminating or which may furnish the State with leads to incriminating rebuttal evidence. That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination."

Petitioner argues that the filing of the notice itself is a violation of the Fifth Amendment because it compels a defendant to incriminate himself if he wishes to call witnesses at his trial. The court does not agree. The only distinction between saying "I did the act but I am legally excused" within ten days after arraignment as compared with after the state presents its case at trial, is the possibility of giving evidence which the state uses to make a *prima facie* case. As previously pointed out, such an abuse did not exist here. Furthermore, by filing the notice, petitioner did not necessarily fix his defense. He was not prevented from abandoning his stated defenses and remaining silent.

In Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed. 908 (1966), the Supreme Court stated:

"We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence

of a testimonial or communicative nature."

In this case, the notice filed by petitioner did not provide the state with any evidence which was used against petitioner. Wigmore states that the Fifth Amendment is "directed at the employment of legal process to extract from the person's own lips an admission of guilt, which would thus take the place of other evidence." 8 Wigmore, Evidence, Section 2263 (McNaughton rev. 1961). Although Wigmore's statement is directed more to interrogations than the filing of a notice, it is important here because it emphasizes that evidence against an accused must result from statements or other communication of the accused before the Fifth Amendment is violated. If, for example, an interrogation is conducted without a Miranda warning, the accused makes a statement, but the statement neither leads to other evidence nor is introduced at trial, can it be said that the accused's Fifth Amendment right to silence has been violated? It cannot, because no evidence resulting from the statement is used against the accused.

As this court views the problem, so long as the state does not make its *prima facie* case from investigation of the notice and list of witnesses which defendant provides, the requirement of filing the notice does not result in self-incrimination. Of itself, the notice does not violate the Fifth Amendment. It merely advances the time (1) to choose whether or not to remain silent, and (2), if the choice is not to remain silent, to state an intention to interpose one or more of the three named defenses and provide a list of witnesses. When so understood, it seems clear that petitioner was not presented with an unconstitutional choice between the Fifth and Sixth Amendments. In a sense, he waived the right to silence, subject to re-asserting it, by choosing to speak, just as one may waive prosecution by indictment or trial by jury. He was not compelled to speak under penalty of losing the right to compulsory process. The only compulsion, if it can be so termed, was to choose whether or not to speak at a time earlier than trial.

Petitioner puts much weight on the proposition that self-defense and insanity involve a confession and avoidance situation whereas alibi involves only avoidance. Thus, he argues, Section 95–1803(d) is unconstitutional because it required him to "confess" the crime. The court does not put so much weight on this argument. It would seem absurd to argue that a defendant confesses a crime by relying on self-defense or insanity at his trial. Self-defense and insanity are valid defenses which do not violate the Fifth Amendment. As discussed above, little reason exists in this case for a distinction between stating the defenses ten days after arraignment or at the time of trial. The presence of the defendant at the scene of the crime and the other elements of the offense remain matters to be proven by the prosecution in spite of the defense. Self-defense and insanity admit nothing. They are clearly meant to avoid the crime, rather than confess it.

## RECIPROCITY

Petitioner contends that Section 95–1803(d) is unconstitutional because, unlike the Florida statute in *Williams, supra*, it does not provide for reciprocity between the names of defense witnesses and the names of prosecution rebuttal witnesses. The only rebuttal witness for the prosecution was a psychiatrist from the state mental hospital who had examined petitioner prior to trial. No objection to his testifying in rebuttal was raised by the prosecution. The defense was aware of the witness, of the substance of his testimony, and of his report. As a practical matter, therefore, reciprocity existed. Petitioner was not taken by surprise on rebuttal and his constitutional rights were not violated by the lack of a reciprocity provision.

**832**

## CONCLUSION

In his concurring opinion in *Williams, supra,* 90 S.Ct. at page 1908, Chief Justice Burger points out that a statute requiring notice of defenses serves "important functions by way of disposing of cases without trial in appropriate circumstances—a matter of considerable importance when courts, prosecution offices and legal aid and defender agencies are vastly overworked." This court strongly believes that broad and fair discovery is an important stepstone to speedy and inexpensive justice. But Section 95–1803(d) is not absolutely free of constitutional difficulty. Some problems have been pointed out in this opinion. Others will be undoubtedly raised in the future. Since trial courts are allowed permissiveness in the application of the statute, it cannot be held unconstitutional on its face and each case must be decided on its own merits. Perhaps the ultimate resolution of the question will depend on a balance between desirable discovery procedure and the strength of a possible constitutional infringement. Because of the difficulties, the legislature of this State may do well to review the statute in light of the present law.

The decision in this case has not been reached easily. Much research and thought have been devoted to the problems presented. Still, the result represents the view of but one judge. It may be that the result of an appeal would prove better to resolve the problems for the courts of this state.

It is the finding of the court that petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution were not violated by the operation of Section 95–1803(d), R.C.M.1947.

It is therefore ordered that petitioner's application for a writ of habeas corpus is denied.