STATE OF NORTH CAROLINA v. JAMES KEITH ROSS

No. 493A90

(Filed 12 June 1991)

1. **Homicide § 9 (NCI3d) — self-defense — court's directive to give written notice — statements to jury venire — absence of prejudice**
       Neither the trial court's directive that defendant give written notice of his intent to assert self-defense in his trial for two murders nor the court's statement to the jury venire

**STATE v. ROSS**

[329 N.C. 108 (1991)]

that defendant intended to assert that defense violated defendant's state or federal constitutional rights or otherwise prejudiced him where defendant knew the State's case because defendant was being tried for a second time on the same charges; the trial court's directive provided the State with no new information about defendant's case; on many occasions prior to the trial defendant indicated to the prosecution and the court that self-defense likely would be an issue in the case, and defendant filed several motions designed to buttress this theory; and it is evident that defendant had planned to follow a self-defense strategy and that the court's statement to the jury did not force him to do so.

**Am Jur 2d, Homicide § 139.**

2. **Criminal Law § 86.2 (NCI3d) — prior convictions — testimony by defendant — door not opened to cross-examination**

Because the trial court denied defendant's motion in limine to exclude evidence regarding defendant's prior sodomy conviction, defendant did not "open the door" to cross-examination on that subject by testifying about the conviction on direct examination. A criminal defendant is permitted to enhance his credibility by testifying as to his criminal record.

**Am Jur 2d, Witnesses §§ 484, 497, 582.**

3. **Criminal Law § 86.2 (NCI3d) — prior convictions — impeachment of credibility**

The only legitimate purpose for introducing evidence of past convictions is to impeach the witness's credibility.

**Am Jur 2d, Witnesses § 581.**

4. **Criminal Law § 86.2 (NCI3d) — prior offenses more than ten years old — admission as harmless error**

The trial court erred in permitting the State to cross-examine defendant about a nineteen-year-old sodomy conviction under N.C.G.S. § 8C-1, Rule 609 in his trial for the murders of two teenage boys where the court failed to identify any fact or circumstance indicating that this evidence was probative of defendant's credibility. However, this error was harmless where there was substantial evidence of defendant's homosexuality, including evidence of homosexual acts with one victim, apart from that supplied by the sodomy conviction,

STATE v. ROSS

[329 N.C. 108 (1991)]

and the overwhelming evidence of defendant's guilt made it extremely unlikely that the jury relied on the evidence of the earlier conviction rather than the substantive evidence of guilt.

**Am Jur 2d, Witnesses § 577.**

5. **Criminal Law § 1185 (NCI4th) — aggravating factor — conviction in Virginia — no juvenile adjudication**

The trial court's finding that a 1970 sodomy conviction of defendant in Virginia was not a juvenile adjudication but that defendant was in fact tried as an adult so that the conviction could be used as an aggravating factor in sentencing defendant for two second degree murders was supported by the evidence, including the certified court record of the conviction and defendant's admission on cross-examination that he pled guilty to a felony violation of the laws of Virginia in 1970 and that judgment had been imposed on him including a probationary period of six years.

**Am Jur 2d, Habitual Criminals and Subsequent Offenders §§ 6, 14, 15.**

Justice MEYER concurring.

Justice MITCHELL joins in the concurring opinion.

APPEAL as of right by defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 100 N.C. App. 207, 395 S.E.2d 148 (1990), affirming judgments imposing two consecutive sentences of life imprisonment entered by *Sitton, J.*, at the 13 March 1989 Criminal Session of Superior Court, MCDOWELL County, upon jury verdicts finding defendant guilty of two counts of second-degree murder. On 10 January 1991 this Court allowed defendant's petition for discretionary review of additional issues. Heard in the Supreme Court 8 May 1991.

*Lacy H. Thornburg, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant appellant.*

STATE v. ROSS

[329 N.C. 108 (1991)]

WHICHARD, Justice.

Defendant was indicted on two counts of first-degree murder for the deaths of Gary Floyd Bailey and Richard Buchanan. At defendant's first trial, the jury returned verdicts of guilty of first-degree murder, and defendant was sentenced to death on both counts. On appeal, this Court awarded a new trial. *State v. Ross*, 322 N.C. 261, 367 S.E.2d 889 (1988). At defendant's new trial, the jury returned verdicts of guilty of second-degree murder on both counts. The trial court imposed consecutive sentences of life imprisonment. A divided panel of the Court of Appeals found no error in the trial. *State v. Ross*, 100 N.C. App. 207, 395 S.E.2d 148 (1990). Defendant appealed as of right on the issue raised by the dissent. N.C.G.S. § 7A-30(2) (1989). We allowed defendant's petition for discretionary review of two additional issues. We now affirm the decision of the Court of Appeals.

The State presented evidence tending to show the following:

In January 1985, defendant was the caretaker and ranger at Camp Grimes, a Boy Scout retreat. Defendant lived alone in a house at the camp. While living at the camp, defendant received permission to build a grease pit near his home. Defendant built the pit with the help of Richard (Ricky) Buchanan.

Teddy Buckner testified that he stayed at Ricky Buchanan's house on 18 January 1985. Buckner went with Buchanan to defendant's house on that day. He waited outside while Buchanan visited defendant. After waiting for almost thirty minutes, Buckner went inside. When Buchanan asked Buckner if he wanted to engage in homosexual acts, he declined.

On 23 January 1985, Ricky Buchanan and Gary Bailey went to visit defendant at the Scout camp. When they did not return home that evening, Bailey's mother looked for but did not find them.

On 26 January 1985, the two boys' bodies were found buried in the grease pit approximately 130 feet from defendant's house. Autopsies revealed that Bailey suffered three gunshot wounds — one to his head near the left ear, one entering the back and exiting the chest, and one entering the abdomen. Buchanan suffered five gunshot wounds — one each in the back, arm, and abdomen, and two in the head. One of Buchanan's wounds was a contact wound, containing powder residue in the wound itself. The autopsies revealed no evidence of sexual molestation.

STATE v. ROSS

[329 N.C. 108 (1991)]

During a search of defendant's house, police discovered carpet stained with what could have been blood. They also found a .32 caliber pistol. Test results indicated that the gun seized from defendant's house was the gun that fired the bullets taken from the victims' bodies. Dried blood found on the pistol was consistent with Buchanan's blood and inconsistent with Bailey's. Human hair found on the pistol was consistent with Buchanan's, but not with defendant's or Bailey's.

The State also presented evidence that on 25 January 1985, defendant sought to match a carpet sample at a local furniture store. He also returned a carpet cleaner that he had rented the previous day.

Defendant testified as follows: He admitted consensual homosexual contact with Ricky Buchanan. On 23 January 1985, Buchanan and Bailey came to defendant's house. During a game of strip poker, defendant went to his kitchen and returned to find Bailey holding a .9 millimeter pistol and Buchanan brandishing an axe. The boys threatened to kill him. When the pistol did not fire, Buchanan grabbed it from Bailey and pulled the trigger. Defendant took this opportunity to get his .32 caliber pistol. Defendant told the boys to drop the gun, but they moved towards him and he fired. Defendant checked the boys' pulses and found that they were dead. He panicked and decided to bury the bodies in the grease pit. He also tried to clean the room.

A few days later, defendant voluntarily surrendered to police officers and gave them the .9 millimeter pistol. He also told the officers where the bodies were buried and where to find the .32 caliber pistol.

[1] Defendant argues he is entitled to a new trial because the trial court, during an informal pretrial conference, "directed defense counsel to prepare a statement affirmatively asserting a theory of self-defense." On the same day, after giving opening remarks and introducing counsel, the court explained to the jury venire the nature of the case. It described the charges against defendant, stated that defendant had pled not guilty, and said "[t]he defendant also has filed what is known as an affirmative defense alleging and asserting the defense of self defense . . . ."

Defendant did not object to the directive to file the statement or to the court's statement to the jury. He now argues that the

order and statement violated his federal and state constitutional rights to be free from self-incrimination, to have effective assistance of counsel, to rely upon the presumption of innocence, and to due process of law.

The directive that defendant give written notice of his intent to assert self-defense was not required by law. A criminal defendant is not generally required to give notice of defenses to be asserted at trial. In enacting N.C.G.S. § 15A-959, which requires notice of the defense of insanity, our General Assembly removed language that would have required notice of alibi as well. N.C.G.S. § 15A-959 (1988), Official Commentary. No other notice requirements appear.

While we find defendant's contention here without merit, we join the Court of Appeals in "strongly caution[ing] against such methods as standard practice without legislative enactment . . . ." *Ross*, 100 N.C. App. at 211, 395 S.E.2d at 150. As the Supreme Court of Arizona stated in rejecting an argument that the inherent power of the court allows it to provide for discovery beyond that expressed in the rules, "pretrial discovery by the State[ ] is fraught with constitutional problems. Each and every trial judge would be left to his own devices to determine where fair play in favor of the State ends and infringement on personal rights begins." *Moore v. State*, 105 Ariz. 510, 513, 467 P.2d 904, 907 (1970). Likewise,

> [i]n the area of prosecution discovery, in contrast to defense discovery, trial courts generally are prohibited from exercising their inherent power to require disclosure beyond that specifically noted in the discovery provision. Prosecution discovery is viewed as so controversial that the failure of the statute or court rule to specifically authorize a particular type of disclosure is taken as indicating the rulemakers did not intend to allow the prosecution such discovery.

2 LaFave & Israel, Criminal Procedure § 19.4, at 511 (1984) (footnote omitted). In *Richardson v. District Court, etc.*, 632 P.2d 595 (Colo. 1981), even though a rule granted broad power to the State for discovery from defendants, the trial court ordered discovery beyond the language of the rule. The reviewing court stated:

> The exclusion [in the statute] of non-expert witnesses' statements from prosecutorial discovery, far from being an oversight, reflects a purposeful decision to prevent the impairment of

constitutional rights that arguably could result from a rule permitting the court to enlarge the categories of prosecutorial discovery on the basis of an *ad hoc* evaluation of each case.

*Id.* at 599; *see also People v. Williams*, 87 Ill.2d 161, 57 Ill. Dec. 589, 429 N.E.2d 487 (1981).

Such problems notwithstanding, we conclude that the directive and statements here were benign. The directive was less burdensome to defendant than the notice of alibi requirement imposed by Florida and approved in *Williams v. Florida*, 399 U.S. 78, 26 L. Ed. 2d 446 (1970). The Court there upheld a rule requiring defendant to provide the names and addresses of alibi witnesses. The requirement here did not involve the disclosure of defense witnesses or statements. Further, though the Court did not consider this factor, the Florida rule would have precluded testimony by unlisted witnesses as a sanction for violating the discovery rule. The court's directive here carried no such draconian consequence.

Other states since have enacted provisions requiring notice of a variety of defenses. *See, e.g.*, Ark. R. Crim. P. 18.3; Hawaii R. Crim. P. 16(c)(3); Ill. Ann. Stat. § 110A, ¶ 413(d). Following *Williams*, courts have upheld such provisions. *See, e.g., Radford v. Stewart*, 320 F. Supp. 826 (D. Mont. 1970), *aff'd*, 472 F.2d 1161 (9th Cir. 1973); *People v. District Court in & for County of Larimer*, 187 Colo. 333, 531 P.2d 626 (1975); *State v. Nelson*, 14 Wn. App. 658, 545 P.2d 36 (1975). The dissent in *Williams* stated that "[t]he rationale of [the] decision [was] in no way limited to alibi defenses . . . ." *Williams*, 399 U.S. at 114, 26 L. Ed. 2d at 484 (Black, J., dissenting).

Significantly, this case lacks the circumstances that led Justice Black to dissent in *Williams*. Justice Black took issue with one essential premise of the majority's decision — "that compelling a defendant to give notice of an alibi defense before trial is no different from requiring a defendant, after the State has produced the evidence against him at trial, to plead alibi before the jury retires to consider the case." *Id.* at 108, 26 L. Ed. 2d at 480. Justice Black stated:

When a defendant is required to indicate whether he might plead alibi in advance of trial, he faces a vastly different decision from that faced by one who can wait until the State

has presented the case against him before making up his mind. Before trial the defendant knows only what the State's case *might* be. Before trial there is no such thing as the "strength of the State's case"; there is only a range of possible cases. At that time there is no certainty as to what kind of case the State will ultimately be able to prove at trial.

*Id.* at 109, 26 L. Ed. 2d at 481 (Black, J., dissenting) (emphasis in original). Here, by contrast, defendant knew the State's case because he had been prosecuted on the charges before. In fact, as noted below, defendant altered his pretrial and trial strategies based on what he learned in his first trial. Though defendant could not assume the State's case would be unchanged, he had a better grasp of the necessity for a strong defense because of the prior trial.

Further, under the particular facts we fail to see how the directive harmed defendant. On many occasions prior to trial defendant indicated to the prosecution and the court that self-defense likely would be an issue in the case. During the first pretrial hearing on pending motions, he sought access to the juvenile records of the victims. When the court inquired into the relevancy of such records, defendant said they were relevant to the theory of self-defense. Later in the same hearing, defendant sought funds to hire an investigator who would provide information about the reputation and character of the victims in order to buttress "a possible self-defense theory on the part of [defendant]."

In addition, this case involves a second trial of defendant on the same charges. Both parties were aware of the evidence and tactics in the first trial. Thus, in preparing for this trial defendant could evaluate the State's case and correct tactical mistakes in the first trial. For example, in a second hearing on pretrial motions, defendant sought an ex parte hearing on the cause of death and "indicate[d] to the Court the first time it was tried on the issue of self-defense, on that issue, it was all blown up during opening statement and the defendant never took the stand and no evidence ever come [sic] out regarding the issue of self-defense." Thus, there were numerous other indications by defendant prior to trial that he intended to assert the defense of self-defense. The trial court's directive that defendant give formal written notice thereof thus provided the State with no new information about defendant's case; therefore, defendant was not prejudiced by this notice requirement.

Defendant also argues, however, that by telling the jury venire defendant intended to assert self-defense, the court essentially told the jury defendant admitted responsibility for the victims' deaths. Further, defendant contends the statement forced him to follow through with the defense, thereby prematurely foreclosing his right to elect not to testify or present evidence. We reject these contentions as well.

We are satisfied that defendant intended from the outset to assert this theory vigorously. As described above, during several pretrial hearings defendant attempted motions designed to buttress this theory. Further, it is apparent that defendant was acutely aware of his strategy during the first trial—including a "blown up" forecast of self-defense evidence followed by defendant's failure to testify or present any such evidence—and that trial's outcome—two convictions of first-degree murder and sentences of death—and that he sought to prevent such a failure of proof at this trial.

The fact that defendant did not object to the court's directive or statement to the jury venire indicates that the court's actions were consistent with defendant's intended trial strategy. Finally, it is salient that defendant told the jury in his opening statement:

> We expect that the evidence will show . . . those young men came over there with something in mind other than visiting [defendant]. They came over there intending to rob him or intending to kill . . . and rob him. . . . The only thing he could do is protect himself in self-defense and save his own life.

It is evident that defendant had planned to follow a self-defense strategy, and that the court's statement to the jury did not force him to do so.

If anything caused defendant to introduce evidence of self-defense, it was "the force of historical fact beyond both his and the State's control and the strength of the State's case built on these facts." *Williams*, 399 U.S. at 85, 26 L. Ed. 2d at 452. As the Court noted in *Williams*,

> [t]he defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction. . . . That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination. The pressures generated

by the State's evidence may be severe, but they do not vitiate the defendant's choice to present . . . [a] defense and witnesses to prove it . . . .

*Id.* at 83-84, 26 L. Ed. 2d at 451.

We conclude that, under the particular facts presented, neither the trial court's instruction that defendant give written notice of his intent to assert self-defense, nor its statement to the jury venire that defendant intended to assert that defense, violated his state or federal constitutional rights or otherwise prejudiced him. This assignment of error is overruled.

Defendant next contends that the trial court erred in denying his motion *in limine* to exclude evidence related to his 1970 Virginia conviction for sodomy. Defendant argues that this evidence was inadmissible under N.C.G.S. § 8C-1, Rule 609, and that he is entitled to a new trial. The Court of Appeals rejected this contention, holding that defendant waived his objection and "opened the door" to cross-examination regarding the nineteen-year-old conviction through his testimony as to the conviction on direct examination. *State v. Ross*, 100 N.C. App. at 213, 395 S.E.2d at 151. We disagree that defendant "opened the door," and we hold that the court erred in denying defendant's motion. We conclude, however, that the error was harmless.

[2] Because the trial court denied defendant's motion *in limine* to exclude evidence regarding defendant's prior sodomy conviction, defendant did not "open the door" to cross-examination on that subject by testifying about the conviction on direct examination. A criminal defendant is permitted to enhance his credibility by testifying as to his criminal record. *See State v. Dellinger*, 308 N.C. 288, 299, 302 S.E.2d 194, 200 (1983). As our Court of Appeals has stated:

Ordinarily, when a defendant is not permitted to testify on direct examination regarding his prior criminal record and the prior record is elicited during cross-examination, the defendant sustains a double blow to his credibility—aside from the obvious effect of the prior conviction, defendant's credibility is hurt because the jury is left with the impression that the defendant tried to hide his criminal record and was not being entirely truthful. Allowing the defendant to testify on direct examination, rather than detracting from his credibility,

may actually bolster his credibility because the jury may believe that the defendant is being completely open and straightforward and worthy of belief.

*State v. Hedgepeth*, 66 N.C. App. 390, 400, 310 S.E.2d 920, 925 (1984); *see also State v. Stanley*, 74 N.C. App. 178, 327 S.E.2d 902, *disc. rev. denied*, 314 N.C. 546, 335 S.E.2d 318 (1985). A defendant would face an unfair dilemma if forced to choose between devastating cross-examination about a conviction and waiver of his right to appeal the denial of a pretrial motion.

Defendant argues that evidence of his 1970 conviction was inadmissible under Rule 609. Rule 609, in pertinent part, states:

(a) General rule.—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime punishable by more than 60 days confinement shall be admitted if elicited from him or established by public record during cross-examination or thereafter.

(b) Time limit.—Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

N.C.G.S. § 8C-1, Rule 609(a), (b) (1988).

Evidence of the prior conviction here would have been admissible under section (a) of Rule 609, if it stood alone. North Carolina's version of Rule 609(a) is more permissive than its federal counterpart in that its only limitation on evidence of a witness's convictions is that the crime be punishable by more than sixty days confinement. The federal rule requires (1) that the crime be punishable by death or imprisonment for more than one year, and that the court balance the probative weight of the evidence against its preju-

dicial·effect, or (2) that the crime involve "dishonesty or false state-ment, regardless of the punishment." Fed. R. Evid. 609(a) (1987).

If, however, more than ten years has passed from the later of the witness's conviction or his release from confinement, section (b) of Rule 609 operates as an additional limitation. In that event, the court must determine that "in the interests of justice, . . . the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." N.C.G.S. § 8C-1, Rule 609(b). In contrast to our more permissive approach to the admission of evidence of crimes less than ten years old, our Rule 609(b) is identical to the federal rule. As stated in *State v. Artis*, 325 N.C. 278, 384 S.E.2d 470 (1989), *vacated and remanded on other grounds*, --- U.S. ---, 108 L. Ed. 2d 604 (1990), "[a]n analysis of the legislative history . . . reveals that it rests upon a rebuttable presumption that prior convictions more than ten years old tend to be more prejudicial to a defendant's defense than probative of his general character for truthfulness, and that they should therefore not be admitted into evidence." *Id.* at 306-07, 384 S.E.2d at 486.

[3] In conducting this critical balancing process it is important to remember that the only legitimate purpose for introducing evidence of past convictions is to *impeach the witness's credibility*. *State v. Tucker*, 317 N.C. 532, 543, 346 S.E.2d 417, 423 (1986).

Rule 609(b) is to be used for purposes of impeachment. The use of this rule is necessarily limited by that focus: it is to reveal *not the character of the witness, but his credibility*. Commentary on the use of impeachment generally, indicating, for example, that impeachment of a witness may be accomplished by "showing that the witness's character is bad," by, for example, "eliciting on cross-examination specific incidents of the witness's life tending to reflect upon his integrity or moral character," 1 Brandis on North Carolina Evidence 3d § 43 at 203, can have no justifiable application to the cross-examination of a criminal defendant. The only "legitimate purpose" for admitting a defendant's past convictions is to cast doubt upon his veracity; such convictions are not to "be considered as substantive evidence that he committed the crimes" for which he is presently on trial by characterizing him as "a bad man of a violent, criminal nature . . . clearly more

STATE v. ROSS

[329 N.C. 108 (1991)]

likely to be guilty of the crime charged." *State v. Tucker*, 317 N.C. at 543, 346 S.E.2d at 423.

*State v. Carter*, 326 N.C. 243, 250, 388 S.E.2d 111, 116 (1990) (emphasis added).

That Rule 609(b) requires a trial court to weigh the probative value of an old conviction against its tendency to prejudice the defendant reflects the same concern: when the witness is the accused, his past convictions should be offered for what they indicate about his credibility, not for what they indicate about his character.

*Id.* at 252, 388 S.E.2d at 117.

[4] The trial court described its analysis under Rule 609(b) as follows: "the Court finds that there is probative value and that in the interests of justice the ten-year rule is hereby waived and the Court would so order and allows the State to question the defendant in regard thereto." This finding describes no "specific facts and circumstances" indicating that the probative value of the conviction "substantially outweighs its prejudicial effect." N.C.G.S. § 8C-1, Rule 609(b).

In *Artis*, we found error in the trial court's admission of a prior conviction under Rule 609 upon findings that two aggravated assaults "have sufficient connection, supported by facts and circumstances, to outweigh any prejudicial effect." *State v. Artis*, 325 N.C. at 307, 384 S.E.2d at 486. The Court stated: "Specific facts and circumstances supporting the probative value of this evidence are neither apparent from the record nor recounted by the trial court. The trial court failed to comply with Rule 609 by identifying any fact or circumstance indicating that this evidence was probative of defendant's credibility." *Id.* The same holds true in this case. Likewise, in *Carter* the court committed error by

singl[ing] out and permitt[ing] evidence that defendant had committed prior assaults because they involved the use of violence. The trial court's conclusory remark that the only purpose for admission through cross-examination would be to impeach the credibility or truthfulness of the defendant was not a "fact" or "circumstance" vouching for an appropriate balance of probative over prejudicial weight.

*State v. Carter*, 326 N.C. at 252, 388 S.E.2d at 117. We conclude, therefore, that admission of defendant's 1970 Virginia conviction for sodomy was error.

However, as in *Carter* and *Artis*, the error was harmless. Defendant contends that the evidence tended to cause the jury to convict him because of his sexual preferences. There was, however, substantial evidence of defendant's homosexuality apart from that supplied by the sodomy conviction. In addition, there was overwhelming evidence of defendant's guilt, making it extremely unlikely that the jury relied on the evidence of the earlier conviction rather than the substantive evidence of guilt. There is no reasonable possibility that a different result would have been reached at trial had the court excluded this prior conviction. N.C.G.S. § 15A-1443(a) (1988). This assignment of error is overruled.

[5] Defendant finally contends that the trial court erred in aggravating his sentence based upon the 1970 Virginia sodomy conviction. The presumptive term of imprisonment upon a conviction of second-degree murder is fifteen years. N.C.G.S. §§ 14-17 (1986), 15A-1340.4(f)(1) (1988). The trial court sentenced defendant to terms of life imprisonment for each of the two convictions for second-degree murder, based in part on defendant's "prior felony conviction in the State of Virginia in 1970." Defendant argues that the Virginia conviction was a juvenile disposition, the sentencing judgment was deferred, and the conviction itself was technically flawed.

The trial court may impose a sentence in excess of the presumptive sentence only if it finds the existence of an aggravating factor and concludes that the factors in aggravation outweigh the factors in mitigation. N.C.G.S. § 15A-1340.4(a), (b) (1988). One aggravating factor is that "[t]he defendant has a prior conviction . . . for criminal offenses punishable by more than 60 days' confinement. Such convictions include those occurring in North Carolina courts and courts of other states . . . ." N.C.G.S. § 15A-1340.4(a)(1)o. To serve as an aggravating factor, however, an out-of-state conviction must be treated as a conviction in the other state. *Id.; see also State v. Beal*, 311 N.C. 555, 319 S.E.2d 557 (1984). In Virginia, a juvenile adjudication is not denominated as a conviction and may not be used as a criminal conviction for any purpose. Va. Code Ann. § 16.1-179 (1975) (current version at § 16.1-308 (1988)). Thus, if the Virginia conviction was a juvenile adjudication, it was im-

STATE v. ROSS

[329 N.C. 108 (1991)]

proper for the trial court to consider it in aggravation of defendant's sentence.

In support of his argument that the Virginia conviction was a juvenile adjudication, defendant demonstrated to the court that he was seventeen years old at the time of the offense and eighteen years old at the time of his trial. In Virginia, a juvenile is "a person less than eighteen years of age." Va. Code Ann. § 16.1-141(3) (Cum. Supp. 1975). Defendant also pointed to the fact that the record of his offense came from a sealed file in a Virginia circuit court. In Virginia, records of juvenile proceedings, whether conducted in circuit court or juvenile court, are sealed. Va. Code Ann. § 16.1-162 (Cum. Supp. 1975).

The State countered with evidence tending to show that the earlier conviction was not a juvenile adjudication. The State offered defendant's own sworn testimony that he pled guilty to a felony violation of the laws of Virginia and that judgment had been imposed on him including a probationary period of six years. The State also offered a certified copy of the 1970 Virginia court record of his conviction. Proof of a prior conviction by a certified copy is expressly permitted by statute and constitutes *prima facie* evidence of the facts set out therein. N.C.G.S. § 15A-1340.4(e) (1988). The certified court record stated that defendant was indicted for the felony of sodomy, that he pled guilty, and that the court deferred the imposition of sentence on the condition that defendant "continue psychiatric and medical treatment." The court record also indicated that the court ordered that defendant be placed on probation for a period of six years.

Also, in Virginia a case involving a juvenile charged with an offense which would be "punishable by confinement in the penitentiary" may be removed from juvenile court and tried in circuit court as would a case involving an adult. Va. Code Ann. §§ 16.1-176(a), (e), 16.1-177.1 (Cum. Supp. 1975). If such a removal occurs, the case proceeds upon indictment, Va. Code Ann. § 16.1-176(e), rather than petition. Va. Code Ann. § 16.1-164 (Cum. Supp. 1975). The certified court record offered by the State to prove defendant's prior conviction stated that defendant was indicted for sodomy, an offense punishable by confinement for any term not less than three nor more than ten years. Va. Code Ann. § 18.1-212 (Cum. Supp. 1975).

STATE v. ROSS

[329 N.C. 108 (1991)]

The trial court made findings of fact, including the finding that defendant "waived his rights as a juvenile and was tried in the Circuit Court as an adult and was sentenced in the Circuit Court as an adult pursuant to 16.1-272 of the Code of the State of Virginia." The court then concluded that the Virginia conviction was not a juvenile adjudication.

A trial court's findings of fact, if supported by competent evidence, are binding upon a reviewing court. *See State v. Johnson*, 322 N.C. 288, 293, 367 S.E.2d 660, 663 (1988). Though no facts tend to indicate that defendant "waived" his rights as a juvenile, there is evidence supporting the trial court's finding that defendant was in fact tried as an adult.

Likewise, the contents of the certified court record, along with defendant's admission on cross-examination that "the Judge imposed a judgment . . . as a result of that guilty plea," constitute sufficient evidence to refute defendant's argument that no judgment was entered on the Virginia felony conviction.

Finally, defendant argues that "nothing in the record before the trial court or this Court suggests that the mandatory [jurisdictional] requirements of a transfer hearing or a written waiver were followed." We find nothing in the record to indicate that jurisdictional requirements were not met. Though the State bears the burden of proving by a preponderance of the evidence that the aggravating factor of a prior conviction exists, *State v. Canty*, 321 N.C. 520, 523, 364 S.E.2d 410, 413 (1988), the "State does not bear the burden of proving the validity of a plea of guilty in a prior criminal matter before it may be used to impeach the defendant or to aggravate his sentence." *State v. Smith*, 96 N.C. App. 235, 239, 385 S.E.2d 349, 351 (1989), *disc. rev. denied*, 326 N.C. 267, 389 S.E.2d 119 (1990). Defendant is not entitled to relief on this assignment of error.

For the foregoing reasons, we affirm the decision of the Court of Appeals.

Affirmed.

Justice MEYER concurring.

While I concur in the final result that the majority has reached, I disagree with the majority's ruling that the admission of the

prior conviction, though harmless, was error. I conclude that there was no error at all in the admission of the prior conviction.

I conclude that the trial court did not err in finding, pursuant to Rule 609(b), that the probative value in the admission of the prior conviction outweighed any prejudicial effect and in waiving the ten-year rule.

Rule 609(b) is limited to a consideration of the admission of evidence for the purpose of impeachment. The use of evidence of a criminal conviction is only admissible under this rule for casting doubt upon defendant's credibility or truthfulness. Admission of convictions older than ten years is permitted only when "the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." N.C.G.S. § 8C-1, Rule 609(b) (1988).

The district attorney prepared and served a written "Notice of Intent to Use Evidence of Conviction of Crimes More Than Ten Years Old" eleven days prior to the scheduled start of trial on 13 March 1989. The notice recited that it was made pursuant to N.C.G.S. § 8C-1, Rule 609(b), and it "begins with his conviction in Danville, Virginia 18th May, 1970." Defendant responded with a written "Motion to Prohibit Use of Evidence of Convictions of Crimes More Than Ten Years Old."

On the first day of trial, immediately before jury selection started, the presiding judge heard a series of motions. The final hearing pertained to the written motion to compel full discovery of all material about prior convictions in the possession of the district attorney. As the hearing progressed, it turned to inquiry as to which prior convictions could be mentioned during jury selection and which would be admissible into evidence for purposes of cross-examination at trial. Counsel for defendant objected to the use of a 1970 Virginia conviction.

Evidence was taken at the motions hearing. The first item presented was a certified copy of a document or documents from a Virginia court dated 18 May 1970. Subsequently, defendant was sworn and testified that he had been convicted in Virginia on 18 May 1970, while represented by counsel, of a felony of crime against nature by kidnapping a male child eleven years of age and forcing the child to take defendant's penis into his mouth. Defendant fur-

ther testified that the presiding judge in Virginia imposed judgment, put him under six years' probation, and ordered certain conditions as a condition of the probation.

At the conclusion of the hearing, Judge Sitton entered the following order in pertinent part:

> Let the record show that the Court finds that the defendant was convicted on May 18, 1970 with the benefit of his privately retained counsel, Mr. Kushner, in the State of Virginia, that that being a felonious conviction, the Court finds *that there is probative value* and that in the interests of justice the *ten-year rule is hereby waived* and the Court would so order and allows the State to question the defendant in regard thereto.

Defendant testified at trial before the jury. During direct examination, the following colloquy took place:

> Q Jim, did you have a conviction for any crime in the State of Virginia?
>
> A Yes, sir, I did.
>
> Q What was that for?
>
> A I don't remember the exact wording of the charge, but the circumstances were that I had given a boy a ride, and I believe he was eleven years old then. He appeared to me to be at the time to be older. I was sixteen at the time this happened. And I offered him money to give me oral sex, which he did.
>
> And some months later I was arrested and charged, I think, with abducting him and forcing him to perform oral sex on me.
>
> Q And you were convicted of that?
>
> A I plead [sic] guilty to that charge; yes, sir.
>
> Q You were sixteen years old?
>
> A I was sixteen when this happened. I was actually seventeen when I was charged and convicted of it.
>
> Q And what was the sentence, Jim?
>
> . . . .

A I think there was six years probation and I was under Court Order to get some psychiatric counseling.

The district attorney cross-examined defendant about the conviction at some length.

At the conclusion of defendant's trial, defendant was sentenced to two consecutive life sentences. The trial judge found as aggravating factors that defendant had been convicted of a felony in Virginia. The felony conviction was the Virginia felony of crime against nature described above.

The prosecution offered as evidence a certified copy of the record of conviction in Virginia and the earlier sworn testimony of defendant acknowledging that he had been convicted of and received a sentence for the crime described in the Virginia papers. Specific details of the Virginia incident were developed through sworn testimony. Evidence was presented to establish that defendant was seventeen years old when charged, eighteen years old when convicted, and that his file was sealed.

At the conclusion of sentencing, the trial judge entered the following order:

Let the record show that . . . the Court having heard the evidence . . . makes the following findings of fact:

That the defendant was born in the month of March, 1952;

That he was charged with the offense of sodomy in the State of Virginia, an offense which was alleged to have occurred on June 20th, 1969 when the defendant was seventeen years of age;

That a trial was conducted on the 18th day of May, 1970 in the Circuit Court of the State of Virginia;

That the defendant having been tried by a jury and although having been seventeen years of age, that he thereby waived his rights as a juvenile and was tried in the Circuit Court as an adult and was sentenced in the Circuit Court as an adult pursuant to 16.1-272 of the Code of the State of Virginia;

That the North Carolina Statutes; particularly Statute 15-A-1340(40) reads in part as follows concerning aggravating factors:

## STATE v. ROSS

[329 N.C. 108 (1991)]

"The defendant has a prior conviction or convictions for criminal offenses punishable by more than sixty days confinement; such convictions include those occurring in North Carolina Courts and Courts of other States, the District of Columbia and the United States, provided that any crime for which the defendant was convicted in a jurisdiction other than North Carolina would have been a crime if committed in this State."

That the Court, having considered the decision of State versus Bill [sic] in the Supreme Court of this State, ruled that the offering of an offense from the State of Alabama was not admissible because the individual was treated as a juvenile.

Based upon the foregoing findings of fact, the Court concludes as a matter of law that this case differs from that of State versus Bill [sic] and the Court finds that the defendant in this case was treated as an adult, was sentenced as an adult and therefore does not merit the protection of secrecy and privacy as a juvenile in the State of Virginia or in North Carolina.

Although the trial judge did not specifically set out the facts and circumstances in support of the probative value of the prior conviction, this alone does not make it error. It is only when the facts and circumstances supporting the probative value of the evidence are not "apparent from the record" that its admission is error. *State v. Artis*, 325 N.C. 278, 307, 384 S.E.2d 470, 486 (1989), *vacated and remanded on other grounds*, --- U.S. ---, 108 L. Ed. 2d 604 (1990). Here, the record is replete with facts and circumstances showing the probative value of the evidence, including defendant's own testimony on direct examination that he pled guilty to the offense in 1970. Because of the particular nature and circumstances of the prior conviction, it is clear to me that its probative value far outweighs its prejudicial effect. It is up to the jury to decide how much weight to give defendant's testimony. Of course, the evidence is prejudicial — all impeachment is prejudicial. The incident in 1970 reflects upon the character of defendant and in doing so raises doubt as to the defendant's credibility. In the prior case, defendant was convicted of a felony involving a sexual offense with a male child eleven years old in that he forced the child to perform fellatio. In the case *sub judice*, defendant admitted to having a consensual homosexual relationship with one of the

boys that he murdered. Due to the similar sexual nature of the two cases, the jury could infer that defendant was not telling the truth regarding his alleged self-defense in the present incident and give less weight to his testimony.

I would affirm the trial court's holding that the prior conviction's probative value outweighed its prejudicial effect.

In addition, I find the majority's lengthy treatment of the question of whether defendant was a juvenile at the time of the commission of the prior crime and whether he "waived" his rights as a juvenile to be completely unnecessary and unwise. As the majority points out, the defendant *admitted* in his own sworn testimony that he had pled guilty to a *felony violation* of the laws of Virginia and that judgment had been imposed on him in 1970. As the majority also points out, under the laws of that state, a juvenile could be tried as an adult for the offense in question. Defendant's testimony is all that is necessary to support a finding that the 1970 conviction was not a juvenile adjudication. *State v. Thompson*, 309 N.C. 421, 307 S.E.2d 156 (1983) (a defendant's own statement that he had been convicted of a prior crime punishable by more than sixty days is a sufficient method of proof).

In conclusion, while agreeing with the majority's final result, I cannot agree that the admission of defendant's prior conviction was error.

Justice MITCHELL joins in this concurring opinion.